RICHARD S. HEATHERLY v. MONTGOMERY COMPONENTS, INC. AND THE TRAVELERS INSURANCE COMPANIES

No. 8410IC19

(Filed 20 November 1984)

1. Master and Servant § 68.4— workers compensation—subsequent injury— result of primary injury

The Industrial Commission's findings and conclusions that plaintiff's second fracture of the leg was the direct and natural result of his previous fracture, which was sustained in the scope and course of his employment, were supported by testimony from plaintiff's doctor that plaintiff's original fracture had not totally healed at the time of the second fracture and would be weaker than normal bone structure.

Heatherly v. Montgomery Components, Inc.

**2. Master and Servant § 69.1— return to work before full recovery—conclusion of total disability unsupported**

      Where plaintiff originally suffered a compound leg fracture in the course of his employment, the Industrial Commission's conclusion that plaintiff was temporarily totally disabled from the time his doctor certified that he could return to work under certain restrictions to the time he reinjured his leg was not supported by the Commission's findings, including the finding that plaintiff's leg had not fully healed.

APPEAL by defendants from order of the North Carolina Industrial Commission entered 2 November 1983. Heard in the Court of Appeals 16 October 1984.

Richard S. Heatherly, plaintiff, sustained a compound angulated fracture of the right middle distal tibia on 24 October 1980 while employed by and in the course and scope of his employment with Montgomery Components, Inc., defendant. Plaintiff's physician certified that plaintiff could return to work on 11 June 1981, but plaintiff was to avoid torsional loading because he had a small but persistent area of nonunion of the fracture. Defendant discharged plaintiff when the latter attempted to return to work.

On 4 July 1981, plaintiff's left foot slipped from under him bringing his weight onto his right leg. He sustained a compound refracture of the right middle distal tibia and a fracture of his fibula.

Defendants denied that the fracture of 4 July 1981 was compensable under the Workers' Compensation Act. Deputy Commissioner Winston L. Page conducted a hearing and entered an order denying compensation because plaintiff's injury "did not arise out of and in the course of his employment with defendant, nor was it the direct and natural result of plaintiff's injury by accident on October 24, 1980." Plaintiff appealed to the Full Commission which entered an order, Chairman William Stephenson dissenting, adopting some of Deputy Commissioner Page's findings of fact, finding that the fracture on 4 July 1981 was the direct and natural result of the compensable injury, and entering a compensation award from 24 October 1980. The Full Commission noted that no evidence was presented for which the amount of compensation could be determined for the injury on 4 July 1981. The parties were directed to enter stipulations regarding the extent and

dates of plaintiff's incapacity to work caused by that reinjury, plus permanent partial disability, if any. Defendants appealed.

*Waymon L. Morris for plaintiff.*

*Roberts, Cogburn, McClure & Williams, by Isaac N. Northup, Jr., for defendants.*

WELLS, Judge.

Defendants' assignments of error are that the Full Commission erred in finding as fact and making conclusions of law thereon (1) that plaintiff's fracture on 4 July 1981 was the direct and natural result of the compensable injury of 24 October 1980; (2) that the added pressure on plaintiff's right leg during the fall sustained on 4 July 1981 was sufficient to cause the second injury; (3) that if the first fracture had been healed, the added pressure alone most probably would not have caused the refracture; (4) that plaintiff was temporarily totally disabled as a result of the original injury from 24 October 1980 until 4 July 1981; and (5) ordering defendants to pay all plaintiff's medical bills. We affirm the Full Commission's order awarding plaintiff compensation for the refracture but reverse and remand that part of the order directing defendants to pay compensation from 11 June 1981 to 4 July 1981.

Our courts have consistently held that workers injured in compensable accidents are entitled to be compensated for all disability caused by and resulting from the compensable injury. *Giles v. Tri-State Erectors,* 287 N.C. 219, 214 S.E. 2d 107 (1975); *accord Perry v. Furniture Co.,* 296 N.C. 88, 249 S.E. 2d 397 (1978); *Roper v. J. P. Stevens & Co.,* 65 N.C. App. 69, 308 S.E. 2d 485 (1983), *disc. rev. denied,* 310 N.C. 309, 312 S.E. 2d 652 (1984). In the case before us, the parties agree that plaintiff's accident of 24 October 1980 is fully compensable. The only issue presented by defendants' appeal is whether or not plaintiff's fracture on 4 July 1981 is compensable under the Workers' Compensation Act.

The law in this state is that the aggravation of an injury or a distinct new injury is compensable "[w]hen the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury arises out of the employment, unless it is the result of an independent in-

tervening cause attributable to claimant's own intentional con-
duct." *Roper v. J. P. Stevens & Co., supra* (quoting *Starr v. Paper
Co.,* 8 N.C. App. 604, 175 S.E. 2d 342, *cert. denied,* 277 N.C. 112
(1970) ) (cite omitted). Our supreme court defines "intervening
cause" in the context of the Workers' Compensation Act as an oc-
currence "entirely independent of a prior cause. When a first
cause produces a second cause that produces a result, the first
cause is a cause of that result." *Petty v. Transport, Inc.,* 276 N.C.
417, 173 S.E. 2d 321 (1970).

Defendants' assignments of error require that this court
determine whether the conclusions of law of the Full Commission
were supported by competent findings of fact. In making our
review, the Industrial Commission's "findings of fact may be set
aside on appeal only when there is a complete lack of competent
evidence to support them. . . . Thus, if the totality of the
evidence, viewed in the light most favorable to the complainant,
tends directly or by reasonable inference to support the Commis-
sion's findings, these findings are conclusive on appeal even
though there may be plenary evidence to support findings to the
contrary." *Click v. Freight Carriers,* 300 N.C. 164, 265 S.E. 2d 389
(1980) (citations omitted). In cases, such as the one before us,
"where the exact nature and probable genesis of a particular type
of injury involves complicated medical questions far removed
from the ordinary experience and knowledge of laymen, only an
expert can give competent opinion evidence as to the cause of the
injury." *Id.* (citations omitted).

Plaintiff proffered expert testimony from his attending physi-
cian for the second fracture, Dr. Charles McConnachie, an or-
thopedic surgeon. His evidence tended to show that plaintiff
sustained a compound fracture of his right tibia and fibula. He
was aware of plaintiff's previous fracture of the tibia and, in his
opinion, it was a refracture along the same fracture line. As to
the first fracture, Dr. McConnachie stated that at the time of the
refracture it was healing but was not "rock-solid." A notation
made on 18 May 1981 by plaintiff's then treating physician stated:

> Radiograph shows a persistent small area of nonunion on the
> medial aspect of the fracture area. The rest of the fracture
> appears well healed. Will allow return to full activity except
> he is to avoid torsional loading as much as possible. Repeat
> x-rays in three months.

Dr. McConnachie indicated that prior to complete healing the fractured bone would be weaker than surrounding bone, but after complete healing it would be stronger than surrounding bone. On cross-examination he stated that in order to refracture the distal tibia and fracture the fibula would require "trauma, as a slip, or something like that." He noted that the path of the second fracture of the tibia went through the area of the original fracture in part but did not follow the exact angular path of the original fracture throughout and that the fibula was not broken in the original injury. On redirect examination he explained that the reason the fibula was broken in the second injury but not the first was because of the difference in the direction of force applied to the bone structure in the second accident.

[1]   We hold that, viewed in the light most favorable to the plaintiff, Dr. McConnachie's testimony provided sufficient evidence to support the Full Commission's findings of fact and conclusions of law that plaintiff's second fracture was the direct and natural result of his original injury. His testimony supported the Full Commission's finding that plaintiff's original fracture had not totally healed at the time of the second fracture and would be weaker than normal bone structure. The Full Commission found that the second fracture would not have occurred unless the original fracture had not healed properly, and this finding of fact is a reasonable inference drawn from Dr. McConnachie's testimony that the second injury was a refracture and that if the plaintiff's original fracture had been fully healed the bone structure would have been stronger than normal bone. A reasonable inference also leading to this finding of fact can be drawn from evidence of plaintiff's original physician that plaintiff was to avoid torsional loading which logically occurred when plaintiff slipped. That the second fracture did not follow the exact same path as the original fracture and also involved the fibula was adequately explained by Dr. McConnachie's testimony that the direction of force was different in each incident.

Our holding is supported by our decision in *Mayo v. City of Washington*, 51 N.C. App. 402, 276 S.E. 2d 747 (1981). In *Mayo*, plaintiff sustained a compensable knee injury on 29 November 1977. Plaintiff reinjured his knee on two subsequent occasions spanning approximately one and one-half months. Plaintiff's physician noted in his treatment records that plaintiff "[w]as injured on

the job a month ago, was reinjured today." The *Mayo* court held that "[t]his was sufficient medical evidence to establish a causal connection between the [first compensable] . . . accident and the subsequent injuries." *Id.* In the case before us, Dr. McConnachie, who had reviewed the medical records of plaintiff's first injury, repeatedly referred to plaintiff's second compound fracture as a refracture. The medical evidence before the Commission in this case, as previously detailed, was more extensive and more directly related to the issue of causation than in *Mayo*.

[2]   The final issue presented by defendants' appeal is whether there was any evidence from which the Full Commission could find that plaintiff was temporarily totally disabled as a result of his original injury by accident from 24 October 1980 to 4 July 1981. Defendants argue that plaintiff's own evidence showed that he was certified to return to work by his treating physician on 11 June 1981.

The Full Commission found as a fact that the original fracture "had not completely healed when the second injury occurred. . . . Plaintiff was temporarily totally disabled as a result of his original injury by accident from October 24, 1980 until July 4, 1981." Defendants excepted to these findings of fact and the conclusions of law based thereon. In making our review, we are limited to a determination of whether there is any evidence to support the Commission's findings of fact and if the findings of fact support the legal conclusions. *Click v. Freight Carriers, supra.*

Our supreme court has held that "there is a presumption that disability ends when the employee returns to work. . . . But this is a presumption of fact and not of law. . . . Receipt of the same wages after injury should create no stronger presumption than the presumption which arises on an employee's returning to work." *Ashley v. Rent-A-Car Co.*, 271 N.C. 76, 155 S.E. 2d 755 (1967) (citations omitted). Plaintiff Heatherly was certified to return to work under certain restrictions on 11 June 1981. Plaintiff reported to work but his employment with defendant was terminated. The certification of fitness and plaintiff's attempted return to work is some evidence of the end of temporary total disability. Under these facts, the Full Commission's finding that plaintiff's leg had not fully healed is not dispositive of his capacity

to earn wages. The findings of the Full Commission that plaintiff was temporarily totally disabled until July 4, 1981 is, in effect, a conclusion of law which is made no less reviewable by virtue of the fact that it is denominated a finding of fact. *Walston v. Burlington Industries*, 49 N.C. App. 301, 271 S.E. 2d 516 (1980), *rev'd on other grounds*, 304 N.C. 670, 285 S.E. 2d 822 (1982).

We hold that the Full Commission's findings of fact do not support the conclusion of law that defendant was temporarily totally disabled from 11 June 1981 to 4 July 1981. As the Full Commission did not make appropriate findings of fact we remand on this issue. *Walston v. Burlington Industries, supra.*

The order of the Industrial Commission as to liability for plaintiff's refracture is

Affirmed.

The order as to temporary total disability from 11 June 1981 to 4 July 1981 is

Reversed and remanded.

Judges ARNOLD and HILL concur.