Plaintiff alleged that she injured her back at work, but first felt severe pain the next morning when she bent to reach for a pan in her kitchen. The Deputy Commissioner found that plaintiff "failed to disclose to any of her medical care providers that the onset of pain arose at the time she was lifting the frying pan", and denied the claim.
The first medical history that claimant provided was at the Nash General Hospital emergency room on February 24, 1992. The emergency room records noted plaintiff's "complaint" as "2-20-92 — lifted box — onset 2-21-92". It reflects that "this 42 year old . . . presents with severe low back pain progressively worsening
after lifting heavy boxes three days ago without injury at the time." (Emphasis ours.) Dr. Bryant was not asked about it on the record, but inclusion of the pan incident would be surprising in his laconic notes. Dr. Nelson's notes recount the box incident and, like a separate event, that "pain then became worse". Dr. Martinez did not recall plaintiff describing the pan incident — or that Dr. Nelson had treated her — but clearly he noted in some detail facts that might be particularly relevant to his medicaltreatment of her. The fact that acute pain from a lifting injury began the following morning was not one of them. There was considerable discussion about whether plaintiff's "low back pain" earlier in the month was caused by infection, as Dr. Bryant recalled, but there was a contemporaneous prescription for an antibiotic to treat it.
It is not unusual for a doctor to observe that pain after a lifting injury may not be felt until the day after the actual injury. See, e.g., Caskie v. R.M. Butler Co., 85 N.C. App. 266,269, 354 S.E.2d 242 (1987). Traumatic damage to spinal area tissues sometimes allows the viscous materials there to move with the passage of a brief time and/or routine bodily motion and insult surrounding nerves with pressure or chemically. In this case, plaintiff's testimony regarding the timing of the onset of pain is consistent with her claim, and with statements to medical personnel and defendant's insurance clerk. Pain need not be contemporaneous with a back injury for the injury to be compensable. Beam v. Floyds Creek Baptist Church, 99 N.C. App. 767,394 S.E.2d 191 (1990). The onset of pain is not a "specific traumatic incident", but the result of one. Roach v. LupoliConstruction Co., 88 N.C. App. 271, 362 S.E.2d 823 (1987).
Both of plaintiff's treating doctors believed that lifting the box was the cause of her back condition. As in Caskie, plaintiff's surgeon, Dr. Martinez, noted that a person diagnosed with a back problem does not always have the onset of acute symptoms immediately after the traumatic incident. Plaintiff's co-worker advised her against moving the heavy box. Plaintiff was able to perform her job before the incident and was physically incapable of sustaining the effort to do so afterward. Plaintiff did not have any work the remainder of that day that would place stress on her back, was stricken with pain the next morning, and did not try to work again until March 15, 1992. There is no evidence the frying pan movement put any significant stress on plaintiff's back. It was clearly routine bending rather than the weight involved or any violent motion that triggered the pain, and thus bending for the pan was not an independent, intervening cause of her disability. Heatherly v. Montgomery Components, Inc.,71 N.C. App. 377, 381, 323 S.E.2d 29 (1984). The greater weight of the evidence points to the on-the-job incident as being the cause of plaintiff's back injury. It appears that contrary inferences were drawn from the lack of emphasis in the physician's notes on the pan incident, or from the evidence concerning plaintiff's prior back pain (Finding of Fact 2), or the delay in onset of pain, or that the physical stress involved with lifting the pan was misapprehended.
Consequently, upon review of all of the competent evidence of record with reference to the errors assigned, and finding good ground to reconsider the evidence, the Full Commission REVERSES the subject Opinion and Award and makes the following FINDINGS OF FACT:
The following were entered into by the parties at the hearing before the Deputy Commissioner, and in a Pre-Trial Agreement dated January 11, 1994, as
STIPULATIONS
1. At the time of the injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. At such time, an employment relationship existed between plaintiff and defendant-employer.
3. Zurich American Insurance Company was the compensation carrier on the risk.
4. Plaintiff's average weekly wage was $238.00, yielding a compensation rate of $158.67.
5. Plaintiff was paid $2,297.12 for short-term disability under an employer-funded plan.
6. Plaintiff's medical records, marked as Stipulated Exhibit 1, were stipulated into evidence.
* * * * * * * * * * * *
Based upon the competent evidence of record, the Full Commission makes the following
FINDINGS OF FACT
1. At the time of the injury giving rise to this claim, plaintiff was 43 years old. She began working for defendant-employer on September 25, 1991, as an Assembler I. She had an unusual number of absences due to "female problems", but none due to a back condition. Her job duties included assembly of bases for key-making machines and wiring of sub-bases. The job involved some bending, twisting and lifting of under 15 pounds. There were two male employees whose job responsibility was to lift items weighing over 15 pounds.
2. On February 4, 1992, plaintiff received medical treatment from her family physician, Dr. James Bryant, for low back pain due to pelvic cellulitis, for which he prescribed Erythromycin. (Depo. of Dr. Bryant, p. 21.) Prior to February of 1992, plaintiff did not have a history of serious back problems, nor had she missed work because of back pain. She had a relatively mild back strain after lifting a child while working at a daycare center in Virginia that resolved after a period of modified duty.
3. On or about Thursday, February 20, 1992, the claimant arrived at her place of employment prior to 6:00 a.m. and went to her work station where, in order to prepare a place for her to work at a work table, she lifted and moved a box weighing approximately 60 to 100 pounds, containing assembly parts identified as "carriages". The box was heavier than she had expected it to be. The men who normally moved heavy boxes were not yet available. Her co-worker, Evelyn Medford, testified that she remembered the incident with respect to the box described by the claimant, that the box contained about forty carriages weighing "three or four pound(s)" each, that she had never lifted one of these boxes containing "carriages" off the floor herself, that the boxes were hard to even push around on a level surface, and that she had previously told the claimant that she would not try to lift that box of carriages. Ms. Medford also testified that when the claimant first returned to work after being out, the claimant told her that "she should have listened to me." Plaintiff experienced no acute pain, at that time, and did not have to do any other heavy lifting that day. She continued to work the rest of the day — the last of her work week — without acute pain.
4. Plaintiff first experienced acute low back pain at home on the following day, Friday, February 21, 1992, when she bent down to get a frying pan from a cabinet underneath her kitchen counter. When she tried to come up, she felt a sharp pain in her back. Plaintiff continued to have pain and took pain medication over the weekend.
5. The following Monday, February 24, 1992, the claimant went to the Nash General Hospital emergency room in Rocky Mount complaining of severe lower back pain that had progressively worsened after she injured her back while lifting a heavy box at work on the previous Thursday. She described radiating pain with weakness, numbness and tingling. Claimant was diagnosed as having "acute paraspinal muscle strain." She was given an injection for pain and was advised to consult her family doctor. On the same day, February 24, 1992, the claimant reported her injury to her employer and sought medical treatment from her family doctor. Monday, February 24, 1992, was the next working day following the lifting of the heavy box. Plaintiff had suffered from low back pain sometime in 1988 or 1989 due to back strain after lifting a child while working at the Southeastern Training Center in Virginia, on which occasion the claimant had received compensation for medical bills incurred, but did not have discomfort prior to the lifting injury.
6. On Monday, February 24, 1992, plaintiff called Imogene Parrish, an insurance and personnel clerk for defendant-employer, and reported that she was absent from work and that the only thing she knew that she had done to cause her back to hurt was that she had picked up a box of carriages at work on Thursday, but she did not feel pain until Friday morning.
7. Plaintiff saw her family physician, Dr. J.E. Bryant, as soon as an appointment was available, and related to him the history of her lifting the heavy box while at work and suffering low back pain as a result, and that she had not been back to work since going to the emergency room on February 24, 1992. On February 29, 1992, Dr. Bryant prescribed diathermy ("deep heat") and gave plaintiff a note to return to work on March 15, 1992. Plaintiff attempted a return to work on March 15, 1992, but left because of pain in her leg and thigh after bending to take some carriages out of a box. Dr. Bryant ordered an MRI which revealed that the claimant had an herniated lumbar disk, ruptured at L4-L5. In Dr. Bryant's opinion, the disk problem was causally related to the on-the-job incident moving the box. Dr. Bryant referred plaintiff to Dr. Greg Nelson, an orthopaedic surgeon.
8. Dr. Nelson first saw the claimant on April 1, 1992. He thereafter saw her three more times and talked with her on the telephone three additional times. Dr. Nelson felt conservative treatment had failed and recommended either a diskectomy or a "work oriented program", with plaintiff going back to work with no lifting greater than 25 pounds and no excessive bending. Plaintiff chose the latter, but since the defendant-employer would not allow plaintiff to return to work with restrictions, Dr. Nelson "set her up for some rehab". Defendants refused to pay for that, or the Voltaren he prescribed. Plaintiff went to rehabilitation arranged by Dr. Nelson for about one week, but she did not have gas money to continue to drive back and forth. Because plaintiff was not able to return to physical therapy, Dr. Nelson was hesitant about proceeding with any type of surgical intervention. Because plaintiff had improved some and he believed she could sit and stand and did not do any heavy lifting or bending on her "assembly line" job, Dr. Nelson referred her back to work with restrictions and exertional limitations, effective June 1, 1992.
9. The claimant returned to her regular job on June 1, 1992 and attempted to work, but was unable to complete a full week. She experienced severe pain and had numerous absences from work because of her inability to perform her work duties. Dr. Nelson called in a prescription for Voltaren for her. She complained that her pain became progressively worse. Nevertheless, she continued trying to work until July 21, 1992, but found that she could not work a full week during that time. Her employer, noting her absences, issued employee reprimands as a result. Defendants' Exhibit No. 2, Employee Reprimand dated July 20, 1992, citing the claimant for absences, contains a statement by claimant that she missed work "because of a disk I have out of place that I hurt on my job . . . ." The forms for disability benefits prepared by the claimant's employer are consistent as to the date of injury to the claimant, the symptoms of her low back pain and the diagnosis of herniated disk. At her employer's request, plaintiff had Dr. Nelson schedule her to see Dr. Martinez for a second opinion with regard to his recommendation that the claimant consider surgery on her lower back.
10. On July 22, 1992, plaintiff first saw Dr. Lucas Martinez, a neurosurgeon, for medical treatment. Plaintiff complained of low back pain with radiation to the right lower extremity in the back of the thigh and leg. Medical tests, including an MRI and a myelogram, revealed a disk herniation at L4-L5. Dr. Martinez's opined that the disk herniation was causally related to the on-the-job incident moving the box, and that a person diagnosed with a herniated disk typically has some discomfort, but does not always have the onset of acute symptoms immediately after a lifting injury such as plaintiff described. Dr. Martinez subsequently performed a diskectomy and lumbar laminectomy at L4-L5 on July 30, 1992 and a post-laminectomy wound debridement on August 17, 1992. Plaintiff received home health care through September 24, 1992. In October of 1992, Dr. Martinez suggested a work-hardening program for plaintiff which plaintiff never received. Dr. Martinez foresaw plaintiff returning to work four weeks after this program and set up an appointment in three months at which time he expected to discharge her. In November of 1992, plaintiff suffered a flare-up of pain, and an exacerbation of the workplace injury, when lifting a container to water some plants. In December of 1992, Dr. Martinez obtained an MRI of the lumbar spine that revealed post-operative changes but no evidence of recurrent disk herniation. In January of 1993, Dr. Martinez opined that plaintiff's work restrictions, without the work-hardening program recommended, which defendant would not provide, would be no repeated lifting of over 30 pounds, no repeated bending, and no stooping.
11. In late 1992, plaintiff had to deal with a narcotic problem which arose from smoking crack cocaine to alleviate her back pain and situational depression due to pain and lack of income. Claimant visited Nash General Hospital on December 2, 1992, where she was referred to a mental health center for treatment. When she found that it would be two weeks before the treatment program recommended would be available to her, she went back to Virginia. There she counseled with a clergyman who helped her overcome the drug problem and stop using the substance. She was not admitted to a hospital nor did she receive any formal outpatient counseling services for this problem. Plaintiff was disabled by her back condition during this period, and did not lose the opportunity to earn wages as a result of this substance abuse problem.
12. Plaintiff made a reasonable attempt to return to her former employment in 1993. The claimant returned to work February 19, 1993 in a regular position as an "025 wirer", and worked until April 30, 1993, when she again applied for medical leave. On May 7, 1993, plaintiff returned to Dr. Martinez because of moderate back pain from a flare-up she had at work. Plaintiff received conservative treatment, and returned on June 4, 1993 with moderate back pain. Upon physical exam, Dr. Martinez found no point tenderness, DTR symmetrically brisk, no weakness in the lower extremities, and the SLR negative bilaterally. He diagnosed probable back strain, and opined that she could return to work in one week's time, or June 11, 1993. Dr. Martinez prescribed pain medication for plaintiff through December 10, 1993.
13. Plaintiff's "025 wirer" job required her to bend, push, and lift items out of boxes, and she was regularly assigned other tasks on an "as needed" basis. She was not able to do the job on a sustained basis, and defendants did not offer plaintiff a light-duty position. Plaintiff has not returned to work for defendant-employer or for any other employer since on or about May 3, 1993. Plaintiff has not attempted to obtain employment of any type since she last worked with defendant-employer.
14. On January 7, 1994, Dr. Martinez saw the plaintiff and observed that she was no longer in pain all of the time. He rated plaintiff with a ten percent permanent functional impairment to her back and permanent work restrictions of no lifting of over 30 pounds and no repeated bending or stooping. Dr. Martinez opined that plaintiff has restriction of mobility of the lumbar spine and will continue to intermittently have discomfort. Plaintiff's testimony indicates that, but for the bending required, she could perform the duties of her former employment. Dr. Martinez was under the impression that she could do that job, even without the work conditioning he had recommended. However, she had not sought employment again prior to the hearing before the Deputy Commissioner.
15. In light of the plaintiff's and her surgeon's opinions of her physical abilities to work, her demonstrated abilities during unsuccessful attempts to return to her former employment, her history of obtaining employment, and her vocational experience, it is found that, by January 7, 1994, plaintiff could have, through reasonable effort, obtained employment within her physician's restrictions and her physical ability to sustain gainful employment and to earn wages. Plaintiff has failed to prove that, after January 7, 1994, she lacked the capacity to earn the wages that she had received prior to the injury.
16. During the course of her disability, the claimant received benefits under a short-term disability plan financed by her employer. The claimant was instructed that in order to receive these benefits, she could not claim a work-related injury. She was so informed despite the fact that she had consistently reported having injured her back when lifting a heavy box while at work. However, in light of her prior absences and complaints, defendants' employee could have formed the belief, in good faith, that her condition was not work related.
17. Plaintiff suffered an injury to her back arising out of and in the course of her employment as a direct result of a specific traumatic incident of the work she was assigned. In addition, having to move a heavy box herself in order to get to her work table was an unlooked for and untoward event not expected or designed by the plaintiff and was not within her normal work routine. As a result of moving a box on February 20, 1992, plaintiff sustained an injury by accident arising out of and in the course of her employment with defendant-employer.
18. The greater weight of the credible evidence of record shows that as a result of her injury on February 20, 1992, plaintiff was temporarily totally disabled from February 24, 1992 until January 7, 1994, except for intermittent periods of time when she returned to work for defendants. During this period of temporary total disability, plaintiff was not offered light duty work by defendants. She did not seek any other employment on her own after May 3, 1993.
19. Plaintiff was paid $2,297.12 in short-term disability benefits under a plan not funded or earned by plaintiff during periods when defendants had neither admitted compensation liability, nor been ordered to pay benefits. The evidence does not show that these payments were made to avoid defendants' obligations under the Act, and they may be credited against compensation in the Commission's discretion.
* * * * * * * * * * * * *
The foregoing findings of fact and conclusions of law engender the following additional
CONCLUSIONS OF LAW
1. As a result of the specific traumatic incident and injury by accident on February 20, 1992, plaintiff is entitled to temporary total disability compensation benefits at the rate of $158.67 per week from February 24, 1992 until January 7, 1994, with credit for wages earned during the intermittent periods when she returned to work for defendant-employer and for $2,297.12 in short-term disability benefits paid plaintiff under an employer-funded plan. N.C. Gen. Stat. §§ 97-2(6), 97-29, and 97-42.
2. Plaintiff is entitled to compensation for a 10% permanent partial disability of her back resulting from the February 20, 1992 injury at the rate of $158.67 per week for 30 weeks. N.C. Gen. Stat. § 97-31(23).
3. Plaintiff is entitled to medical compensation necessary to effect a cure, give relief, or lessen plaintiff's period of disability arising from the subject injury, including rehabilitative treatment. N.C. Gen. Stat. § 97-25.
* * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
AWARD
1. Defendants shall pay plaintiff in one lump sum temporary total disability benefits at the rate of $158.67 per week for the period February 24, 1992 through January 7, 1994, subject to the attorney fee allowed herein, and subject to credit for wages paid during intermittent periods when she returned to work for defendant-employer, and for $2,297.12 in short-term disability benefits paid plaintiff under an employer-funded plan.
2. Defendants shall pay plaintiff 30 weeks of permanent partial disability compensation at the rate of $158.67 per week, in one lump sum, subject to the attorney fee hereinafter approved.
3. A reasonable attorney's fee of 25% of said compensation is approved for plaintiff's counsel, and shall be deducted and paid from the lump sum, and paid by every fourth check of any subsequent compensation paid without contest, directly to counsel.
4. Defendants shall pay the cost of all medical compensation necessitated by the subject injury, including any deductibles or copayments paid by plaintiff, when the bills for the same have been submitted to the defendants and approved according to the rules of the Industrial Commission. The claimant is entitled to reasonable rehabilitation and/or work-hardening prescribed by her physician.
5. Defendants shall pay the costs due this Commission.
 S/ __________________ J. RANDOLPH WARD COMMISSIONER
CONCURRING:
S/ __________________ BERNADINE S. BALLANCE COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER
JRW:md 2/11/97