Upon review of the competent evidence of record with respect to the errors assigned, and finding no good grounds to receive further evidence or rehear the parties or their representatives, the Full Commission, upon reconsideration of the evidence, affirms the Opinion and Award of the Deputy Commissioner.
 *********** MOTION
Defendant's motion for sanctions to be imposed against counsel for plaintiff is hereby DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission and the Commission has jurisdiction of the parties and the subject matter.
2. At the time of plaintiff's alleged injury giving rise to this claim, 5 March 1993, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
3. On 5 March 1993, an employment relationship existed between plaintiff and defendant.
4. Defendant was self insured.
5. The parties stipulated that the provisions of N.C. Gen. Stat. § 97-24 are not applicable to this case or are not at issue in this case.
6. The parties stipulated that, for the purposes of this action, plaintiff's average weekly wage is $405.77.
7. Defendant has stipulated that plaintiff sustained an accident on 5 March 1993, but there is no stipulation that such accident resulted in an injury or compensable disability.
 ***********
The Full Commission affirms the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing in this matter before the Deputy Commissioner, plaintiff was a 62 year old man having a fourth grade education. Plaintiff cannot read or write.
2. Plaintiff was employed with defendant as a machine fixer from September 1976 until September 1994.
3. Plaintiff's primary duty was to fix textile machines such as sewing, folding and turning machines.
4. As of 5 March 1993, plaintiff's average weekly wage with defendant was $405.77.
5. Plaintiff's duties as machine fixer required him to carry around a sixty pound toolbox while walking to the various locations within defendant's textile mill to work on designated machines.
6. In 1953, plaintiff was involved in an automobile accident in which he sustained multiple injuries, including an injury to his left leg. Plaintiff had a fusion of his left foot in order to repair a left foot drop. As a result of this accident and fusion, plaintiff had a reduced range of motion in his left ankle, left ankle arthritis, and a limp.
7. After recuperating from the 1953 car accident, plaintiff worked for the next forty years performing various jobs which required physical activity, such as construction work and pipe fitting. Plaintiff had been employed by defendant on two earlier occasions before his most recent employment with defendant beginning in September 1976.
8. In December 1981, while employed with the defendant, plaintiff twisted his left leg in an automobile accident and was out of work from 7 December 1981 until 25 January 1982. Plaintiff experienced continuing pain for approximately one year, primarily in his left calf from the level of the knee radiating down toward the foot. During this period, plaintiff continued to work, and all treatment for left leg pain ended by January 1983.
9. In 1987 and 1989, plaintiff was treated for cellulitis in his left lower extremity. The cellulitis caused swelling of his left foot and was accompanied by fever. On both occasions the cellulitis fully resolved after antibiotic treatment.
10. On the Friday afternoon of 5 March 1993, plaintiff was lying on the floor of defendant's textile plant working underneath a folding machine when a co-worker pushed a metal cart stacked with pillowcases over the plaintiff's feet. When the plaintiff began getting out from beneath the machine, his left foot caught on the metal cart. Plaintiff twisted his left ankle and felt an immediate pain in his left foot and ankle.
11. Plaintiff testified that he reported the incident immediately to his foreman. Defendant has stipulated that plaintiff sustained an accident on 5 March 1993. Defendant produced written documentation dated 16 March 1993, describing the accident as occurring on 5 March 1993.
12. Plaintiff left work on 5 March 1993, with the assistance of a co-worker who helped him to the car lot. Plaintiff drove himself home.
13. Over the course of the weekend, plaintiff experienced swelling of his left foot and ankle and applied a home remedy consisting of soaking his foot in warm salt water.
14. Plaintiff first sought medical treatment with his family doctor, Dr. McMurray, on 8 March 1993. Dr. McMurray's notes report that plaintiff presented with a swollen left foot. After his doctor's appointment, plaintiff returned to work for the remainder of the day but stayed out of work the remainder of that week.
15. Plaintiff returned to work on Monday, 15 March 1993. He continued to experience pain in his left foot and ankle with weight-bearing, and was treated on several occasions that week by the defendant's medical department nurses. Defendant referred plaintiff to Dr. Robert H. Beaver, an orthopedist. Dr. Beaver had treated plaintiff during 1982, 1983, 1989 and 1991, and was familiar with plaintiff's underlying osteoarthritic condition secondary to the old injuries sustained in the 1953 automobile accident.
16. Dr. Beaver first examined and treated plaintiff in relation to the 5 March 1993 accident on 26 March 1993. At this visit, Dr. Beaver's notes report that plaintiff presented "with a new problem," and diagnosed plaintiff with "posterior tibial tendonitis."
17. As Dr. Beaver testified, the 5 March 1993 accident transformed plaintiff's "static condition in his ankle" into the chronic condition for which he treated plaintiff from 26 March 1993 until September 1994.
18. Beginning 26 March 1993, Dr. Beaver recommended restricted work activity with no prolonged standing or walking more than four hours a day. Plaintiff was permitted to return to light duty, standing fifty percent of the time. Plaintiff's wages were reduced during this restricted return to work, until 13 July 1993.
19. Dr. Beaver continued to treat the plaintiff during May, June, July and September 1993. On 2 September 1993, Dr. Beaver certified that plaintiff could return to his regular work activity, but requested that defendant work with plaintiff in an effort to keep plaintiff off his foot. Dr. Beaver also reported on the 2 September 1993 office visit that plaintiff was still having difficulty walking on unlevel ground.
20. During the next eleven months, plaintiff continued to experience pain and swelling in his left foot and ankle, but continued to work. Plaintiff sought treatment for his left ankle at the defendant's nursing station on eight or nine occasions between November 1993 and September 1994. Defendant did not document any employee visits to the nursing station located within the plant where plaintiff worked during this period. Repeated requests for a referral to Dr. Beaver were denied.
21. Plaintiff continued to experience pain and swelling in his left foot and ankle during between November 1993 and September 1994, as he testified and as corroborated by his wife's testimony.
22. On Sunday, 18 September 1994, plaintiff was in a break room at work getting coffee when he turned and felt a sudden pain in his left ankle. Plaintiff then could no longer put any pressure on his left foot, and he left work after reporting this injury. Plaintiff has not been able to return to work in any capacity since this date.
23. Plaintiff sought medical treatment two days later on 20 September 1994 at the Miller Orthopedic Clinic, Inc., in Charlotte, North Carolina. The physician who examined plaintiff reported of plaintiff's left foot that "[a]bout 18 months ago he apparently twisted it at work, I believe, and it started bothering him and then last Sunday he twisted it again." Plaintiff's foot was placed in an air splint, and he was kept out of work on the advice of the doctor. Plaintiff was advised to see Dr. Hodges Davis at the Miller Orthopedic Clinic for evaluation of his left foot. Repeated medical visits for ankle pain and discomfort between November 1993 and September 1994 demonstrate that the 18 September 1994 re-injury was a natural consequence of the 5 March 1993 injury.
24. Dr. Davis first began medical care and treatment of plaintiff's left ankle beginning 12 October 1994. This treatment was continuing as of the date of the hearing. Dr. Davis performed an ankle fusion in December 1994, and in August 1995 reported a nonunion of his ankle fusion and recommended a second fusion of the ankle.
25. Plaintiff did not pursue scheduling this second fusion. In July 1996, plaintiff was in an automobile accident when he reportedly "tried to brace his foot and felt something pop inside." Dr. Davis's records and testimony reflect that plaintiff's left ankle fusion had not been successful and a second fusion had been recommended nearly a year prior to this car accident. Plaintiff scheduled surgery for re-fusion after the July 1996 car accident.
26. The second fusion was performed by Dr. Davis subsequent to the hearing before the Deputy Commissioner. Dr. Davis testified that, in his opinion, the July 1996 automobile accident worsened plaintiff's symptoms, but from a physical and medical standpoint, plaintiff was in need of the re-fusion prior to the automobile accident.
27. Based on Dr. Davis's testimony, the Commission finds as fact that the original ankle fusion performed in December 1994 had not healed and had produced a nonunion prior to the July 1996 automobile accident, which nonunion resulted in the medical need for the re-fusion ultimately performed after the automobile accident. These surgeries were necessary as a result of the 5 March 1993 and 18 September 1994 injuries.
28. As of the date of Dr. Davis's testimony on 19 November 1996, plaintiff had not reached maximum medical improvement.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 5 March 1993, plaintiff sustained an injury by accident, which injury arose out of and in the course of his employment with defendant. N.C. Gen. Stat. § 97-2.
2. As there is no evidence that plaintiff's earning capacity during his seventeen years of employment with defendant was impaired by the 1953 automobile accident, plaintiff's preexisting infirmity resulting from the 1953 accident does not affect his right to compensation under the Act. Morrison v.Burlington Industries, 304 N.C. 1, 282 S.E.2d 458 (1981).
3. Defendant is responsible for the entire disability resulting from any work-related injury even though, without the pre-existing non-work-related condition, the injury may have resulted in a lesser disability or no disability. Pruitt v.Knight Publishing Co., 27 N.C. App. 254, 218 S.E.2d 876 (1975).
4. Plaintiff's injuries on 18 September 1994 and in July 1996 were the direct and natural result of his original compensable injury on 5 March 1993 and, accordingly, arose out of and in the course of his employment with defendant and are compensable. Heatherly v. Montgomery Components, Inc.,71 N.C. App. 377, 323 S.E.2d 29, 30 (1984). These injuries were not attributable to plaintiff's own intentional conduct and do not constitute independent intervening causes within the meaning of the Act. Id. In addition, there is no evidence of any independent intervening cause occurring between 5 March 1993 and 18 September 1994, which was the last date of plaintiff's active employment with defendant.
5. There is sufficient medical evidence to establish a causal connection between the 5 March 1993 accident and the subsequent injuries in September 1994 and July 1996.
6. On 5 March 1993, plaintiff's average weekly wage was $405.77 and yielded a compensation rate of $270.51. N.C. Gen. Stat. § 97-2 (5).
7. As a result of his injury by accident on 5 March 1993, plaintiff is entitled to compensation for any reduction in earnings while he was on light duty employment with defendant. N.C. Gen. Stat. § 97-30.
8. As a result of his injury by accident on 5 March 1993, plaintiff is entitled to temporary total disability compensation from the date of his last day of employment with defendant and continuing until defendant obtains permission from the Industrial Commission to cease payment of compensation. N.C. Gen. Stat. § 97-29.
9. Plaintiff is entitled to have paid by defendant all of his medical expenses incurred as a result of his injury by accident. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. For plaintiff's temporary partial disability resulting from his injury by accident on 5 March 1993, defendant shall pay plaintiff two-thirds of the difference between his pre-injury wages and wages he earned while placed on light duty employment from 26 March 1993 through 13 July 1993. Defendant is entitled to a credit for any wage-loss compensation paid during this period. As this amount has accrued, it shall be paid in a lump sum, subject to the attorney's fees approved in paragraph four of this Award.
2. For plaintiff's temporary total disability resulting from his injury by accident on 5 March 1993, defendant shall pay plaintiff compensation at the rate of $270.51 per week from his last date of employment with defendant and continuing until defendant obtains permission from the Industrial Commission to cease payment of compensation. Any accrued amount shall be paid in a lump sum, subject to the attorney's fee approved in paragraph four of this Award.
3. Defendant shall pay all medical expenses incurred by plaintiff as a result of his injury by accident on 5 March 1993.
4. A twenty-five percent (25%) counsel's fee is the usual and customary fee in workers' compensation cases of similar factual and legal difficulty. An award of thirty percent (30%) would be excessive under the facts of this case and would unduly reduce plaintiff's income replacement. A reasonable attorney's fee of twenty-five percent of the compensation due plaintiff is approved for plaintiff's counsel and shall be paid as follows: 25 % of the accrued amount due plaintiff pursuant to paragraph one of the Award shall be deducted from that amount and paid directly to plaintiff's counsel; thereafter, every fourth payment of compensation shall be paid directly to plaintiff's counsel.
4. Defendant shall pay the costs.
 *********** S/ _______________________ RENÉE C. RIGGSBEE COMMISSIONER
CONCURRING:
S/ _____________________ THOMAS J. BOLCH COMMISSIONER
S/ _____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER