I respectfully dissent from the majority decision to reverse the Deputy Commissioners Opinion and Award and conclude that (1) the employment offered by McDonalds was not suitable under the restrictions imposed by plaintiffs treating physician; (2) plaintiff did not constructively refuse employment; (3) plaintiff is entitled to ongoing total disability beyond 15 June 1998, the date she reached maximum medical improvement; and (4) plaintiffs injuries which occurred subsequent to 15 June 1998 were the direct and natural consequence of the 1 January 1998 injury by accident.
(1) The majority concludes that plaintiffs job with defendant-employer was not suitable based upon the release with restrictions issued by Dr. Curl on 9 February 1998. The release stated that plaintiff was capable of performing light-duty sedentary work for four hours per day no lifting more than ten pounds, and no bending, stooping, climbing or reaching overhead. Dr. Curl specifically testified that the cashier position with defendant-employer was within these restrictions. Without further explanation, the majority finds as a fact that "[g]iven the nature of the restrictions . . . . the cashier position provided to [plaintiff] by defendant-employer was not suitable. This finding is not supported by the evidence.
The Act defines "suitable employment as that which is "suitable to [the employees] capacity. G.S. 97-32. The evidence in this case shows that defendant-employer is able to accommodate the restrictions imposed by plaintiffs physician, and in fact does so. The owner of defendant business testified that they regularly comply with the needs of handicapped employees, and have one employee who works as a cashier and is confined to a wheelchair. Defendant-employers compliance with plaintiffs restrictions is further borne out by the fact that plaintiff returned to work for more than a month without difficulty, and was only released from employment when she repeatedly violated the cash drawer policy of the business. Therefore, based upon the evidence presented, the position offered by defendant-employer constitutes suitable employment under the Act.
(2) The Court of Appeals has defined constructive refusal to accept suitable employment as follows:
 [w]here an employee, who has sustained a compensable injury and has been provided light duty or rehabilitative employment, is terminated from such employment for misconduct or other fault on the part of the employee, such termination does not automatically constitute a constructive refusal to accept employment so as to bar the employee from receiving benefits for temporary partial or total disability. Rather, the test is whether the employees loss of, or diminution in, wages is attributable to the wrongful act resulting in loss of employment, in which case benefits will be barred, or whether such loss or diminution in earning capacity is due to the employees work-related disability, in which case the employee will be entitled to benefits for such disability. Therefore, is such cases the employer must first show that the employee was terminated for misconduct or fault, unrelated to the compensable injury, for which a nondisabled employee would ordinarily have been terminated. If the employer makes such a showing, the employees misconduct will be deemed to constitute a constructive refusal to perform the work provided and consequent forfeiture of benefits for lost earnings, unless the employee is then able to show that his or her inability to find or hold other employment of any kind, or other employment at a wage comparable to that earned prior to the injury, is due to the work-related disability.
Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 228, 233-34,472 S.E.2d 397, 401 (1996).
The evidence in the present case shows that, on three occasions, plaintiff violated defendant-employers cash drawer policy. On two occasions in December 1997, plaintiffs cash register was short by $21.00 and $44.83. On 9 March 1998, plaintiffs cash drawer was again short, this time by $43.83. Both the owner of defendant business and the store manager testified that these shortages were substantial. A supervisor for defendant-employer testified that whether to terminate an employee for cash drawer violations was within the discretion of the supervisor, especially in cases where the shortage was substantial. Plaintiffs employment was terminated following the third cash drawer shortage. There is no evidence to support the majority conclusion that plaintiff was terminated for reasons related to her disability. Again, defendant-employer demonstrated a willingness and a practice of affirmatively providing work within the various physical restrictions of its disabled employees. The majoritys ruling to the contrary is based upon unfounded supposition. Plaintiffs loss of or diminution in wages is attributable to the wrongful act resulting in her discharge, which constitutes constructive refusal to accept suitable employment in bar of recovery under the Act.
(3) There is no evidence to support the majoritys conclusion that plaintiff remains totally disabled. In order to find that an employee is permanently and totally disabled, the employee must meet the burden of showing that he is totally incapable of earning wages. To receive compensation for a permanent total disability, an employee must show that she is "totally unable to earn wages which . . . [she] was receiving at the time [of injury] in the same or any other employment. Burwell v.Winn-Dixie Raleigh, 114 N.C. App. 69, 73, 441 S.E.2d 145, 149 (1994). A reduction in wages resulting from a compensable injury will only support permanent partial disability and not total disability. Franklin v.Broyhill Furniture Industries, 123 N.C. App. 200, 205, 472 S.E.2d 382,386, disc. review denied, 344 N.C. 629, 477 S.E.2d 39 (1996).
Dr. Walter Davis deemed plaintiff to have reached maximum medical improvement on 19 May 1998, with no additional disability rating impairments to her knee, and a 3% permanent partial disability rating to her neck. He released plaintiff to return to light duty work. On 15 June 1998, Dr. Curl concluded that plaintiff had reached maximum medical improvement and gave her a 1% permanent partial disability rating to her right arm and a 5% permanent partial disability rating to her right leg. The restrictions he imposed for her return to work did not change from those imposed in February 1998, with the exception of an increase in the maximum lifting weight to fifteen pounds. As discussed above, defendant-employer had positions available within these restrictions and would have employed plaintiff had she not been terminated for reasons unrelated to her disability. This evidence demonstrates that plaintiff is able to earn wages at least at a reduced level; therefore, plaintiff is not eligible for permanent and total compensation under the Act.
(4) There is no medical support for the majoritys conclusion that plaintiffs injuries after she reached maximum medical improvement on 15 June 1998 were the direct and natural result of the 1 January 1998 injury.
The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury.Heatherly v. Montgomery Components, Inc., 71 N.C. App. 377, 379,323 S.E.2d 29, 30 (1984).
Plaintiff began having falling problems in July 1998, approximately six months after her compensable injury by accident, and after she had reached maximum medical improvement and had been released to return to light-duty work. Dr. Curl testified that this problem was an expected consequence of her (non-work-related) 1994 surgery, and Dr. Davis testified that plaintiff had not sustained a material change in the impairment of her knees compared to her condition prior to the 1 January 1998 injury. Both doctors found that, when plaintiff reached maximum medical improvement in June 1998, she did not sustain appreciable increase of disability to her knees (Dr. Davis gave 0% increase, Dr. Curl gave a 5% increase to plaintiffs right leg). Because the subsequent injuries arose out of plaintiffs condition as it existed prior to the 1 January 1998 injury and not as a result of that incident, plaintiff is not eligible for compensation under the Act for those injuries.
For the foregoing reasons, I dissent from the majority Opinion and Award and vote to affirm the Opinion and Award of the deputy commissioner.
 S/__________________ RENE C. RIGGSBEE COMMISSIONER