***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Griffin and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms with modifications the Opinion and Award of Deputy Commissioner Griffin and enters the following Opinion and Award:
 *********** EVIDENTIARY MATTERS
Defendant filed a Motion to Supplement the Record dated June 3, 2011 seeking to admit into evidence a Form 90 report obtained after the close of the record. Based upon the Opinion and Award entered by the Full Commission herein reserving for subsequent determination the issue of plaintiff's disability after March 21, 2011, defendant's motion is DENIED at this time, *Page 2 
without prejudice. Plaintiff's Amended Form 44 responses relating to defendant's motion are moot. The evidentiary rulings of Deputy Commissioner Griffin in the Opinion and Award are AFFIRMED.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties stipulate that an employee-employer relationship existed on February 15, 2010.
2. Cape Fear Valley Health System is the self-insured defendant-employer at risk, having been the workers' compensation carrier for defendant-employer on the date of the alleged injury.
3. The parties were subject to the North Carolina Workers' Compensation Act at the time of the alleged specific traumatic incident and/or injury by accident.
4. Upon updated wage information produced post-hearing before the Deputy Commissioner, the parties stipulate that plaintiff's average weekly was $671.66, yielding a compensation rate of $447.80.
5. Plaintiff's last day worked was May 3, 2010.
6. Defendant-Employer regularly employs three or more employees and is bound by the provisions of the North Carolina Workers' Compensation Act.
7. The Industrial Commission has jurisdiction of the parties, and all parties have been properly named in this action.
 *********** *Page 3 
The following were submitted to the Deputy Commissioner as:
 EXHIBITS
1. Stipulated Exhibit Number 1, Pre-Trial Agreement, Industrial Commission Forms, Medical Records, Plaintiff's Employment File, Motions of the Parties, Defendant's Payment Register;
2. Plaintiff's Exhibit Number 1, Photograph of the inside of an ambulance, admitted for illustrative purposes only;
3. Plaintiff's Exhibit Number 3, Affidavit of Nancy Looby;
4. Plaintiff's Exhibit Number 4, Affidavit of James Smith;
5. Plaintiff's Exhibit Number 5, Correspondence from Defendant-Employer to Plaintiff-Employee;
6. Defendant's Exhibit Number 1, Payment Register;
7. Defendant's Exhibit Number 2, Plaintiff's Supplemental Responses to Defendant's First Set of Interrogatories.
 ***********
The following were received into evidence before the Deputy Commissioner as:
 DEPOSITIONS
1. Oral deposition of Louis Almekinders, M.D., taken on November 19, 2010 with Deposition Exhibit Number 1 attached to the deposition transcript.
2. Oral deposition of Elsie Holden taken on November 2, 2010 with Exhibits numbered 1 and 2 attached to the deposition transcript.
3. Oral deposition of William Schaefer, M.D., taken on November 2, 2010 with Plaintiff's Exhibits numbered 1 and 2 attached to the deposition transcript. *Page 4 
 ***********
As set forth in the Pre-Trial Agreement and Deputy Commissioner Griffin's March 18, 2011 Opinion and Award, the Full Commission addresses the following:
 ISSUES
1. Whether plaintiff's left clavicle injury and need for medical treatment is related to the February 15, 2010 left shoulder injury and if so, what benefits is plaintiff entitled to receive?
2. Whether plaintiff suffered an injury by accident on February 15, 2010, that materially aggravated and accelerated a non-disabling, non-surgical, pre-existing condition to his left clavicle?
3. Whether defendant is entitled to reimbursement and/or a credit for employer funded long term disability benefits?
4. Whether defendant is entitled to reimbursement for plaintiff's portion of the September 13, 2010 mediation fee in the amount of $562.50?
5. Whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1?
 ***********
Based upon the preponderance of the evidence from the entire record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 38 years old. He received his EMT Certification from Fayetteville Technical College in 2004. He has also received several different certifications through the EMS department. *Page 5 
2. On August 23, 2004, plaintiff began employment as an EMT Basic with defendant-employer. The EMT Basic position requires lifting patients from wrecked vehicles after automobile collisions, carrying patients on stretchers up and down flights of stairs, and lifting patients out of beds and onto stretchers.
3. On November 2, 2008, plaintiff sustained a left clavicle fracture injury as a result of a motorcycle accident. Plaintiff underwent conservative treatment for his left clavicle fracture with Dr. Edwin Newman with Cape Fear Orthopaedic Clinic. On February 5, 2009, Dr. Newman reviewed an x-ray of the left shoulder, which revealed that the fracture line in plaintiff's clavicle was still visible. At this time, Dr. Newman assessed plaintiff with a "clinically" healed left clavicle fracture and released him to return to full duty work, without restrictions.
4. On February 5, 2009, plaintiff returned to his position as an EMT Basic working full duty, without restrictions. Plaintiff continued to work in this position until February 15, 2010.
5. In late January 2010, plaintiff scheduled an appointment with Dr. Dickson Schaeffer, an orthopaedic surgeon, to evaluate a "knot" that had developed on his left shoulder.
6. On February 15, 2010, plaintiff sustained a compensable injury to his left shoulder arising out of and in the course of his employment with defendant-employer. Plaintiff was loading a stretcher with a patient into the back of the ambulance when the stretcher came back and struck plaintiff in the left shoulder.
7. On the day of the accident, plaintiff completed a written report, which he provided to his supervisor, Helen Averitt.
8. Plaintiff was evaluated in the Emergency Room of the hospital on February 15, 2010. An x-ray of the left shoulder revealed his prior left clavicle fracture. He was diagnosed with a left shoulder strain/contusion and advised to follow up with Employee Health. *Page 6 
9. On February 18, 2010, plaintiff presented to Dr. Howard Stansberry with Occupational Health Services. Dr. Stansberry assessed plaintiff with a left shoulder contusion/strain and left upper extremity paresthesias. Conservative care, including medication, physical therapy, and modified duty work, was recommended.
10. On March 2, 2010, plaintiff presented to Dr. Schaeffer for a previously scheduled appointment. Plaintiff complained of pain and a popping sensation in his left clavicle with certain movements. Plaintiff reported his 2008 motorcycle accident and the conservative treatment he received for the injury. He also reported reinjuring his shoulder on February 15, 2010, after he was hit in the anterior shoulder by a stretcher. Plaintiff noted he was undergoing physical therapy with little improvement. A physical examination revealed motion at the midshaft of the clavicle and a palpable deformity of the midshaft of the clavicle. Dr. Schaeffer ordered a CT scan to evaluate fracture healing.
11. On March 4, 2010, plaintiff returned to light duty work within his restrictions. Defendant accepted plaintiff's workers' compensation claim on a Form 60. Temporary partial disability benefits were initiated beginning March 4, 2010 based on an average weekly wage of $474.00.
12. On March 4, 2010, plaintiff reported the February 15, 2010 injury to Nancy Looby, the workers' compensation adjuster for defendant-employer. During their conversation, he informed her of his prior motorcycle accident, the conservative treatment he received with Dr. Newman and that he had been released to full duty work without an impairment rating. Plaintiff informed Ms. Looby that prior to the February 15, 2010 accident, he had scheduled an appointment with his orthopedist for his left clavicle. Ms. Looby remembers plaintiff telling her that any left clavicle issues were not related to the February 15, 2010 injury. *Page 7 
13. On April 16, 2010, plaintiff reported to Dr. Stansberry that he was scheduled to undergo left clavicle surgery on May 5, 2010, to be performed by Dr. Schaffer. As a result, Dr. Stansberry noted he would defer any additional physical therapy and/or rehabilitation pending the outcome of plaintiff's surgery. With regard to his left shoulder, Dr. Stansberry advised plaintiff to continue working with his current work restrictions.
14. On May 5, 2010, Dr. Schaeffer performed an open reduction internal fixation to plaintiff's left clavicle. On May 20, 2010, plaintiff returned for his first post-operative visit. He was released to return to light duty work on this date.
15. On August 31, 2010, Dr. Schaeffer recommended removal of the clavicle plate due to plaintiff's complaints of painful hardware. Dr. Schaeffer scheduled plaintiff for a pre-operative visit to remove the plate, but plaintiff did not return for further treatment with him.
16. On September 23, 2010, plaintiff sought a second opinion for his left clavicle condition with Dr. Louis Almekinders, who recommended continued observation or re-exploration with possible grafting and re-fixation. Plaintiff advised Dr. Almekinders that he would weigh his options.
17. On February 22, 2011, plaintiff returned to Dr. Almekinders who released plaintiff to return to work, with no lifting of patients. Effective March 21, 2011, Dr. Almekinders released plaintiff to full duty work with no restrictions regarding his left arm and left clavicle.
18. Dr. Schaeffer opined plaintiff's nonunion of the left clavicle was related to the November 2008 motorcycle accident. Following his full duty release by Dr. Newman on February 5, 2009, plaintiff continued to work his full duty position as an EMT Basic without difficulty. Based on patient history, Dr. Schaeffer opined plaintiff's nonunion of the left clavicle was not painful until he was hit with a stretcher on February 15, 2010. Dr. Schaeffer further opined that *Page 8 
but for the February 15, 2010 incident, plaintiff would not have required surgical repair of the left clavicle. His opinion was based on a review of Dr. Newman's medical records and patient history. The Full Commission finds Dr. Schaeffer's testimony to be competent and credible evidence with respect to causation.
19. Although Dr. Almekinders was somewhat equivocal on the subject of causation, the totality of his testimony reflects his opinion that plaintiff had a relatively painless nonunion that was aggravated and became symptomatic following the February 15, 2010 incident.
20. Based upon the preponderance of the medical evidence of record, the Full Commission finds that plaintiff sustained a compensable injury by accident on February 15, 2010, which resulted in a material aggravation of his preexisting left clavicle condition.
21. Defendant was unable to accommodate plaintiff's work restrictions provided by his treating physicians, so plaintiff was unable to continue to work with defendant-employer during the healing period. Plaintiff last worked for defendant-employer on May 3, 2010. Since plaintiff was not at maximum medical improvement and was still employed, but could not work because defendant-employer could not accommodate his restrictions, it would have been futile for him to seek suitable employment elsewhere. It would also have been futile for plaintiff to seek employment from other employers prior to reaching maximum medical improvement, considering his physical limitations resulting from his injury and his limited educational and vocational qualifications. The Full Commission finds that plaintiff was temporarily totally disabled and is entitled to temporary total disability benefits from February 16, 2010 to March 21, 2011, subject to a credit due defendant for wages earned by plaintiff from accommodated work from February 16, 2010 through May 3, 2010. *Page 9 
22. The hearing before Deputy Commissioner Griffin took place on September 30, 2010. As plaintiff's full duty work release occurred on March 21, 2011, subsequent to the hearing before the Deputy Commissioner, the Full Commission finds that plaintiff has not had the opportunity to prove whether or not he remains disabled from any employment as the result of his compensable left shoulder and left clavicle injuries following the March 21, 2011 full duty work release. This issue is reserved for later determination and either party may file a request for hearing on the issue of disability following plaintiff's March 21, 2011 full duty release.
23. On August 5, 2010, plaintiff began receiving monthly long-term disability benefits in the amount of $1,257.36, which are entirely funded by defendant-employer. As of the date of the hearing before the Deputy Commissioner, plaintiff continues to receive the monthly long term disability benefits. Defendants are entitled to a credit for payment of long-term disability benefits to plaintiff during any week in which plaintiff receives indemnity compensation.
24. The Full Commission finds, based on the medical issues presented in this matter, that neither party engaged in stubborn or unfounded litigiousness, as both parties raised legitimate issues for determination.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has shown by the preponderance of the evidence that on February 15, 2010, he sustained a compensable injury to his left shoulder arising out of and in the course of his employment, which resulted in the material aggravation of his preexisting left clavicle nonunion. Plaintiff has also shown by the preponderance of the evidence from the entire record that the *Page 10 
aggravation of his preexisting left clavicle nonunion was the direct and natural consequence of his compensable injury by accident. N.C. Gen. Stat. § 97-2(6); Heatherly v. Montgomery Components,Inc., 71 N.C. App. 377, 323 S.E.2d 29 (1984),disc. rev. denied, 313 N.C. 329, 327 S.E.2d 890 (1985).
2. An employee may meet his burden of proving disability in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work-related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but it would be futile because of pre-existing conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury. Russell v. Lowes Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993).
3. In the instant case, plaintiff has established, by the preponderance of the evidence of record, that he was totally disabled as a result of his compensable injury from February 16, 2010, through March 21, 2011, the date of plaintiff's full duty work release. Plaintiff has shown that although he was capable of performing some work, defendant was unable to accommodate his work restrictions provided by his treating physicians during his healing period after May 3, 2010, and that since was still and employee of defendant-employer, it would have been futile for him to seek suitable employment elsewhere. Plaintiff has also shown that it would also have been futile for him to seek employment from other employers prior to reaching maximum medical improvement, considering his physical limitations resulting from his injury and his limited educational and vocational qualifications. Therefore, plaintiff has proven disability under the third *Page 11 
prong of Russell. The diminished wages earned by plaintiff while performing part time, accommodated work were not evidence of wage earning capacity; however, defendant is entitled to an offset against compensation owed for these wages. Id.
4. Due to the timing of the hearing in this matter, the Full Commission should reserve the issue regarding plaintiff's disability, if any, following the March 21, 2011 full duty work release.
5. The medical treatment plaintiff has received has been reasonably required in order effect a cure, give relief or lessen his period of disability for both his left shoulder and left clavicle and defendant is obligated to pay for such treatment. . Plaintiff is entitled to receive future medical treatment related to his compensable injury, subject to the limitations of N.C. Gen. Stat. § 97-25.1. N.C. Gen. Stat. § 97-25.
6. Defendant is entitled to a credit or offset for any employer-funded long-term disability benefits paid to plaintiff during any week plaintiff also received indemnity compensation. N.C. Gen. Stat. § 97-42.
7. Defendants are entitled to an offset for overpayment of benefits to plaintiff in the amount of $332.29 based upon the updated wage information stipulated by the parties during the deposition of Elsie Holden, EMS Support Manager. N.C. Gen. Stat. § 97-42.
8. Pursuant to Industrial Commission Mediation Rule 7(c), the mediator's fee, unless agreed to otherwise by the parties, shall be allocated as follows: "one share by plaintiff(s) and one share by the workers' compensation defendant-employer or its insurer." In this case, defendant paid the entire mediator's fee, including plaintiff's portion. As such, defendant is entitled to reimbursement for plaintiff's share of the mediator's fee for the mediation conducted on September 13, 2010. *Page 12 
9. Neither party engaged in stubborn or unfounded litigiousness, as both parties raised legitimate issues for determination. Therefore, neither party is entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Subject to a reasonable attorney's fee approved herein, defendant shall pay plaintiff temporary total disability compensation at the weekly compensation rate of $447.80 from February 16, 2010, to March 21, 2011. All amounts have accrued and shall be paid in one lump sum to plaintiff. Defendant is entitled to a credit or offset for the overpayment of temporary total disability benefits in the amount of $332.29, for the long-term disability benefits paid to plaintiff, which were entirely employer-funded and for any wages or indemnity compensation paid to plaintiff after February 16, 2010.
2. Defendant shall pay plaintiff's medical expenses incurred or to be incurred as a result of his compensable left shoulder and left clavicle injuries, for so long as such examinations, evaluations, and treatments may reasonably be required to effect a cure, give relief, or tend to lessen the period of disability according to procedures allowed by the Industrial Commission.
3. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: Twenty-five percent (25%) of the lump sum due plaintiff shall be deducted and paid directly to plaintiff's counsel. *Page 13 
4. Plaintiff shall reimburse defendant for his portion of the mediator's fee from the mediation conducted on September 13, 2010.
5. Defendant shall pay the costs.
This the 25th day of September, 2011.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/___________________ STACI T. MEYER COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER