***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Chief Deputy Commissioner Gheen. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Chief Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The following documents were introduced into evidence as:
 EXHIBITS
1. Plaintiff's Exhibit #1: Oweida Orthopaedic Associates medical records.
2. Plaintiff's Exhibit #2: Carolina Healthcare System records.
3. Defendant Hartford's Exhibit #1: Form 21 dated May 21, 2001.
4. Defendant Hartford's Exhibit #2: Letter from Aneco to Oscar Washington (hereinafter "Washington") dated September 21, 2001.
5. Defendant Hartford's Exhibit #3: Form 28B filed October 11, 2001.
6. Defendant Continental's Exhibit #1: Agreement and Release.
Subsequent to the deputy commissioner hearing, plaintiff proffered into evidence a facsimile transmittal from Aneco Electrical Construction (hereinafter "Aneco") to Hartford Insurance Company (hereinafter "Hartford") dated June 27, 2001. Despite the fact that the record was closed the document is being admitted in the discretion of the Industrial Commission and the interest of justice. The document is being identified as:
Plaintiff's Exhibit #4: Letter from Aneco to Hartford dated June 27, 2001.
 ***********
The competent evidence of record engenders the following issues for determination by the Full Commission:
 ISSUES
1. Is plaintiff entitled to treatment for his right shoulder and/or his left shoulder as a result of his original accident on August 3, 2000?
2. Is plaintiff entitled to treatment of his right shoulder and/or left shoulder from an accident that occurred on May 25, 2001?
3. Does a Compromise Settlement Agreement executed by plaintiff and approved by the Industrial Commission preclude Washington's claims for further medical treatment and benefits under the Workers' Compensation Act for the injury of August 3, 2000, and May 25, 2001?
 ***********
The parties, appearing before Deputy Commissioner Ronnie Rowell, on August 2, 2002, entered into the following Findings of Fact and Conclusions of Law as:
 STIPULATIONS
1. The "Agreement and Release" (hereinafter "Compromise Settlement Agreement") dated November 5, 2001 was amended in two respects. First, even though the Compromise Settlement Agreement referred to two accident dates in May 2001 the parties agreed that there was only one accident date, May 25, 2001. Second, the Compromise Settlement Agreement is amended to read that the injury was to the "right" shoulder rather than "left" shoulder.
2. Plaintiff suffered a right elbow injury on May 25, 2001. The parties disagree whether he also injured his right shoulder on that date.
3. Plaintiff reinjured his right shoulder on September 20, 2001, while he was on vacation. Plaintiff contends that the injury of September 20, 2001, relates back to the earlier accident of August 3, 2000, as a change of condition. Hartford contends that the injury of September 20, 2001, relates back to the reinjury of the shoulder on May 25, 2001.
4. Plaintiff admitted that his elbow injury was not subject to further litigation based upon the Compromise Settlement Agreement. Plaintiff contends that the injury to his shoulders is not subject to the release contained in the Compromise Settlement Agreement because the employer had two different insurance companies; the Hartford being responsible for his shoulder injury and Continental Casualty Company (hereinafter "Continental") being responsible for his elbow injury.
5. Subsequent to the hearing before the Full Commission, defendants Aneco and Continental Casualty Company, in a letter to Commissioner Thomas J. Bolch, dated July 22, 2003, stipulated that said parties, through counsel, prepared the clincher agreement that was entered into on November 5, 2001, with respect to I.C. Claim No. 147664.
 *********** EVIDENTIARY RULING
Defendant-Hartford/Aneco's motion to admit additional medical evidence to the record of this case, dated June 9, 2003, in the form of plaintiff's office notes from Oweida Orthopaedic Associates on August 13, 2002 was GRANTED via Order filed by the Full Commission on June 26, 2003.
 ***********
Based upon the evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT A. First Injury: August 3, 2000 (I.C. File No. 148148)
1. Plaintiff sustained an admittedly compensable injury to his right shoulder on August 3, 2000. Hartford insured Aneco on this date and paid plaintiff temporary total disability benefits effective October 9, 2000, continuing until February 14, 2001.
2. Dr. Sami J. Oweida performed a subacromial decompression and distal clavicle excision to the right shoulder on November 2, 2000. Dr. Oweida released plaintiff to return to work on February 7, 2001 with work restrictions of no strenuous or overhead use of the right arm, but permitting repetitive light use of the right arm.
3. Plaintiff returned to light duty work on February 15, 2001.
4. On March 13, 2001, Dr. Oweida proclaimed plaintiff at maximum medical improvement, released him from his care, and assigned a ten percent (10%) permanent impairment rating of his right arm. Plaintiff retained permanent work restrictions of no repetitive overhead activity and lifting no more than ten to twenty pounds with the right arm. Plaintiff then returned to his regular duties as an electrician with Aneco.
5. Plaintiff and Hartford executed a Form 21, Agreement for Compensation for Disability, on May 21, 2001, which was approved by the Industrial Commission on June 28, 2001. The Form 21 reflects plaintiff received twenty-four weeks of permanent partial disability benefits in the amount of $11,332.08 based upon Dr. Oweida's rating of plaintiff's right arm.
6. On October 11, 2001, Hartford filed a Form 28B, Report of Employeror Carrier/Administrator of Compensation and Medical Compensation Paidand Notice of Right to Additional Medical Compensation, with the Industrial Commission reporting plaintiff received temporary total disability benefits from October 9, 2000 to February 14, 2001 and permanent partial disability benefits from February 14, 2001 to August 1, 2001.
 B. Second Injury: May 25, 2001 (I.C. File No. 147664)
7. Plaintiff sustained another work related accident on May 25, 2001 while pulling wire through conduit, one of his regular job duties. After three to four days, plaintiff's right arm, especially the shoulder and elbow, began to swell. (The record is often confusing as many documents reference an accident on May 28, 2001. For example, the Form 19 filed by Aneco incorrectly designates the date of the accident as May 28, 2001. The parties stipulated that the date of plaintiff's accident is May 25, 2001.)
8. Continental Insurance Company insured Aneco on May 25, 2001 and paid plaintiff temporary total disability benefits effective May 28, 2001 through July 29, 2001.
9. Dr. Oweida examined plaintiff on June 12, 2001 and his notes reflect that the pain in his right shoulder was not "identical" to that experienced as a result of his injury on August 3, 2000. In fact, Dr. Oweida described plaintiff's right elbow symptoms as an "entirely new complaint" and diagnosed plaintiff's conditions as strain and tendonitis of the right shoulder caused by plaintiff's overuse of the affected limb at work.
10. Aneco filed a Form 19 on June 13, 2001 and a Form 60 on June 18, 2001. (Both Industrial Commission forms incorrectly date the accident on May 28, 2001 rather than May 25, 2001).
11. Dr. Oweida continued to treat plaintiff through July 2001, retaining his initial diagnosis of strain and tendonitis of the right shoulder and right lateral epicondylitis, both of which were slowly resolving.
12. On July 25, 2001 Aneco filed an Amended Form 60 to correct plaintiff's average weekly wage. The Amended Form 60 described plaintiff's injury as an injured right elbow.
13. Plaintiff returned to work at Aneco on July 30, 2001 and was assigned light duty for approximately three weeks. Plaintiff was then assigned to temporarily substitute for a supervisor who experienced a heart attack for approximately ten days. Plaintiff was next assigned to regular electrician duties at a local high school until September 14, 2001, which was his final day of work. During plaintiff's approximately two-week period at the high school, he was working eight hours per day since this was the maximum number of hours he could work while on light duty.
14. Plaintiff, represented by an attorney, Andre Tippens, filed a Form 18 on August 13, 2001. The injury is listed as: "Left elbow (sic) on the 25 day of May, 2001." (The parties agreed that the designation of the "left" elbow was in error as the injury was to the "right" elbow.)
15. Dr. Oweida released plaintiff from his care on August 21, 2001 finding he had reached maximum medical improvement. Dr. Oweida's notes contain the following summary:
 "He has returned to his normal baseline state regarding the shoulder and I am re-releasing him from our care. There is no change in his impairment rating regarding his shoulder, which is 10% of the arm. Regarding the elbow, because of his persistent right lateral epicondylitis, I am giving him an additional 5% impairment of his right hand. He may work at his present duty but he is unfit for repetitive overhead lifting and for repetitive lifting with his hand pronated."
16. Plaintiff went on vacation on September 17, 2001. During his vacation, plaintiff reinjured his right shoulder while walking his dog who weighed some seventy pounds. After walking his dog on a leash, plaintiff experienced difficulty moving his arm and it was "stinging."
17. Aneco wrote plaintiff on September 21, 2001 demanding that plaintiff return to work on September 24, 2001, warning that failure to report to work would represent a violation of company policy. The greater weight of the evidence establishes that plaintiff did not receive this correspondence.
18. Plaintiff obtained a second opinion as to the extent of the disability to his right elbow. The physician, Dr. Stephen Shaffer, performed the examination on September 25, 2002 and assigned a rating of a five percent (5%) impairment of his right arm.
19. Aneco discharged plaintiff for missing three consecutive days from work on September 26, 2001.
20. Plaintiff, Aneco, and Continental executed a Compromise Settlement Agreement on November 5, 2001. The Compromise Settlement Agreement refers to Washington's injuries on May 25, 2001 to his right arm "including his right elbow and his right shoulder." The Compromise Settlement Agreement specifically provides that plaintiff released Aneco and Continental from:
 "any and all claims, demands, suits, actions, or rights of action, which he now has, or may hereafter have, or claim to have as a result of the accident of on or about May 25, 2001, and any subsequent disability found by the North Carolina Industrial Commission to exist, if any. . . .
. . .
 As further consideration for the $10,000 which [Continental] is paying to the Employee, the Employee agrees that the release provisions contained in the preceding . . . shall release the Employer and Carrier with respect to any and all injuries or occupational diseases which the Employee suffered to his left arm (sic) in his employment with the Employer between May 2001 and October 2001 inclusive, regardless of whether occurring in a specific accident on May 28, 2001, or some other date, or whether caused by overuse over a period of time so as to qualify as an occupational disease."
21. Plaintiff testified that he reviewed the Compromise Settlement Agreement with his attorney prior to signing it. Plaintiff's testimony confirms that he was able to read the Compromise Settlement Agreement. In fact, plaintiff noted several errors in the Compromise Settlement Agreement. One error plaintiff noted was the reference to the left shoulder. Plaintiff's counsel indicated that the agreement would be corrected, which appears not to have been successfully accomplished.
22. The Executive Secretary of the Industrial Commission filed an Order on November 26, 2001 approving the Compromise Settlement Agreement. Continental submitted a Form 28B, Report of Employer orCarrier/Administrator of Compensation and Medical Compensation Paid andNotice of Right to Additional Medical Compensation, on November 27, 2001 reporting that plaintiff was paid temporary total disability benefits from May 28, 2001 to July 29, 2001 and $10,000.00 for the agreement.
23. Plaintiff testified that he believed that the Compromise Settlement Agreement he executed did not preclude further claims for his shoulder injury because each of Aneco's insurance companies was responsible for a different part of his injuries. Plaintiff contends, in essence, that Hartford was responsible for the injuries to his right shoulder and Continental was responsible for the injury to his right elbow.
24. The Compromise Settlement Agreement that plaintiff executed, while represented by counsel, specifically referred to his shoulder injury. The specific language of the release contained in plaintiff's Compromise Settlement Agreement provided a release of (emphasis added):
 "the Employer and Carrier with respect to any and all injuries or occupational diseases which the Employee suffered to his left arm (sic) in his employment with the Employer between May 2001 and October 2001 inclusive, regardless of whether occurring in a specific accident on May 28, 2001, or some other date, or whether caused by overuse over a period of time so as to qualify as an occupational disease."
 C. Left Shoulder Pain
25. Plaintiff testified that his left shoulder became symptomatic on December 1, 2001 for the first time when he completed his course of pain medication.
26. Plaintiff sought medical treatment on March 28, 2002 at Oweida Orthopaedic Associates and visited Dr. Robert P. Lonergan. Plaintiff reported at this visit that he had experienced a "repeat" injury at Aneco and had never recovered. Dr. Lonergan stated in his notes that plaintiff's right shoulder X-rays revealed "an excellent decompression with a Type I acromion, which is very smooth and an adequate resection of the distal clavicle." Dr. Lonergan diagnosed plaintiff was diagnosed with recurrent right shoulder bursitis. Dr. Lonergan's notes make no mention of any left shoulder symptoms.
27. Plaintiff filed a Form 33, Request That Claim Be Assigned forHearing, with the Industrial Commission on March 28, 2002 naming his injury as to the right shoulder.
28. Plaintiff returned to Dr. Oweida on April 9, 2002. Dr. Oweida noted that plaintiff was continuing to have problems with his right shoulder. Dr. Oweida's pertinent medical observations are:
 "He returns to see me because he is having continued problems with his shoulder. We have documented in his chart that he re-injured himself in May of last year when he went back to his regular work. . . . The elbow is better but the shoulder is not. . . . I have previously rated him and released him. He is not satisfied with his outcome because he is not able to do vigorous heavy overhead work. When he doesn't do the vigorous overhead work, he is fine and has no significant pain. . . . Range of motion of the shoulder is normal. . . . There is no painful arc of motion. . . ."
Dr. Oweida opined that plaintiff was suffering continuing impingement and tendonitis. Dr. Oweida's notes contain no mention of left shoulder problems.
29. Plaintiff filed a Form 18, Notice of Accident to Employer and Claim of Employee, Representative, or Dependent for Workers' Compensation Benefits, as to Continental on May 28, 2002. The date of accident was reported as May 28, 2001 and plaintiff's alleged injury was "left
shoulder." Plaintiff described the injury occurring, "[w]hile working overhead already having injured right shoulder, running pipe for outside lights between wall studs on ten foot ladder."
30. The Form 18 filed on May 28, 2002 is the first occasion on which plaintiff reported an injury to the left shoulder.
31. Plaintiff did not work on May 28, 2001, Memorial Day, a legal holiday. The record establishes that he did not work between the injury on May 25, 2001 and his return to work on July 30, 2001. The evidence of record is insufficient to prove that plaintiff's left shoulder pain is a natural consequence of his August 3, 2000, right shoulder injury.
 D. Change of Condition
36. On June 21, 2002, plaintiff sent a letter requesting additional medical treatment "on both shoulders." Pursuant to Workers' Compensation Rule 801 and in the interest of justice, the Full Commission is treating this letter as plaintiff's Motion for Additional Medical Treatment for injuries enumerated in I.C. No. 148148.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. The Industrial Commission acts in a judicial capacity in approving a Compromise Settlement Agreement and, once approved, the agreement between the parties is binding and becomes award enforceable by court decree.E.g., Vernon v. Steven L. Mabe Builders, 110 N.C. App. 552, 430 S.E.2d 676, reversed, 336 N.C. 425, 444 S.E.2d 191 (1993) (hereinafter "Vernon"). In the instant case, the evidence of record clearly shows that the Compromise Settlement Agreement entered into by plaintiff with Aneco and CNS was in relation to plaintiff's claim pursuant to I.C. No. 147664, and did not relate to or extinguish plaintiff's claim pursuant to I.C. No. 148148 with Hartford. Defendants Aneco and Continental Casualty Company stipulated that said parties, through counsel, prepared the clincher agreement that was entered into on November 5, 2001, with respect to I.C. Claim No. 147664. Hartford was not a party to the agreement. Moreover, the Settlement Agreement specifically states that the employer and carrier are released with respect to any injury occurring between May 2001 and October 2001. Thus, plaintiff's injury (I.C. No. 148148) on August 3, 2000, when Hartford was the carrier on the risk, is not subject to the Compromise Settlement Agreement plaintiff entered into with Aneco and Continental Casualty on November 5, 2001, with respect to I.C. Claim No. 147664.
2. Plaintiff has provided sufficient evidence of a change of condition regarding his admittedly compensable August 3, 2000, injury. N.C. Gen. Stat. § 97-47.
3. The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. Heatherly v. Montgomery Components, Inc., 71 N.C. App. 377,323 S.E.2d 29 (1984). Unless the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable. Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485 (1983). In the instant case, the evidence of record is insufficient to show that plaintiff's left shoulder pain is a natural consequence of his August 3, 2000, right shoulder injury.
4. Plaintiff would benefit from medical compensation reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability arising out of the admittedly compensable August 3, 2000, right shoulder injury. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Hartford, until further Order of the Commission, shall pay for medical compensation reasonably required to effect a cure, give relief, or lessen plaintiff's period of disability arising from the admittedly compensable August 3, 2000, right shoulder injury.
2. Defendant Hartford shall pay the costs.
This 7th day of October 2003.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER