***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stephenson. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to the Workers' Compensation Act.
2. All medical records and vocational rehabilitation notes of plaintiff may be introduced without further authentication.
3. Plaintiff's average weekly wage is $464.80, which yields a weekly compensation rate of $309.88.
4. Plaintiff was employed by defendant-employer at all times relevant to this claim.
5. Plaintiff sustained a compensable injury on December 9, 1997.
 ***********
Based upon the credible evidence of record and reasonable inferences drawn therefrom, the Full Commission finds as fact the following:
 FINDINGS OF FACT
1. Plaintiff sustained an injury by accident arising out of and in the course and scope of her employment with defendant-employer on December 9, 1997.
2. At that time, plaintiff slipped in a puddle of water, fell to the ground, and injured her left knee.
3. Defendants accepted this claim as compensable via the filing of an Industrial Commission Form 60 on February 12, 1998, and have provided medical compensation to plaintiff for the injury occurring on December 9, 1997.
4. In addition, plaintiff has received temporary total disability benefits for all periods of time in which she was out of work due to the injury of December 9, 1997.
5. Plaintiff has received medical treatment from a number of medical providers including but not limited to Dr. Jason Jones at Garner Family Physicians; Dr. Brian T. Szura at Cary Orthopaedics and Sports Medicine Specialists; Dr. Ralph A. Liebelt at Triangle Orthopaedics; Dr. Paul J. Burroughs at The Bone and Joint Surgery Clinic; Dr. George C. Debnam at the Debnam Clinic; and Dr. Bradley K. Vaughn at Raleigh Orthopaedics.
6. Plaintiff's treatment has included conservative measures as well as arthroscopic surgery, which was conducted in February 1998.
7. In addition, plaintiff underwent a primary total knee arthroplasty (replacement) of the left knee on August 28, 2001, which was performed by Dr. Vaughn.
8. Plaintiff treated with Dr. Vaughn from May 24, 1999, through November 11, 2002. During the course of her treatment with Dr. Vaughn, plaintiff was consistently diagnosed with osteoarthritis and degenerative joint disease.
9. Plaintiff participated in a functional capacity evaluation on April 30, 2002. It was recommended that plaintiff return to modified duty work with occasional material handling of up to ten pounds from twelve inches to the floor to overhead, constant sitting and frequent standing with a flexible sit/stand schedule, and occasional repetitive, squatting, bending, balancing, and stair climbing with use of a hand rail.
10. Plaintiff presented to Dr. Vaughn on July 31, 2002, for a follow-up examination and evaluation regarding her left knee replacement. On examination, Dr. Vaughn noted that Plaintiff presented in no acute distress and had full extension of her left knee. Dr. Vaughn noted no signs of swelling, ecchymosis or erythema. Dr. Vaughn further indicated that plaintiff was neurovascularly intact.
11. X-Rays taken on July 31, 2002, showed plaintiff's knee prosthesis to be well seated with no evidence of loosening or infection.
12. Plaintiff presented to Dr. Vaughn on August 8, 2002, with a combination of pain, swelling, and a sense of her leg feeling dead below the knee. Dr. Vaughn noted that Plaintiff struggled with physical therapy after her knee replacement but was eventually able to achieve full extension. X-Rays taken on that date revealed the presence of flexion instability that was worsening and giving plaintiff the symptoms she described.
13. On November 11, 2002, as a result of the instability referenced above, Dr. Vaughn recommended that plaintiff undergo a revision of her left knee arthroplasty. Dr. Vaughn further noted that as a result, plaintiff's job search activities would have to be put on hold.
14. Dr. Vaughn testified during deposition that plaintiff's revision surgery was needed because plaintiff's posterior cruciate ligament had become deficient, and that such deficiency made plaintiff's knee replacement not function properly.
15. Dr. Vaughn testified that during the initial knee replacement surgery, plaintiff's posterior cruciate ligament was intact and healthy; however, within nine or ten months after the surgery, the ligament became unstable and unable to function. In explaining the left knee arthroplasty (knee replacement) performed on plaintiff, Dr. Vaughn testified:
 There are two types of knee replacements; one where you save the posterior cruciate ligament; the second, you cut it out. If you save it, and we did [in plaintiff's case], the knee stability is dependant on that ligament. If the ligament stretches or breaks, then the knee starts to slide around when the knee is bent.
16. Dr. Vaughn testified that, at the time of surgery, he chose to leave plaintiff's posterior cruciate ligament intact because it was in good condition; however, Dr. Vaughn testified that, in some cases, "it stretches, it breaks or else it just wasn't competent enough to hold the knee replacement in the first place." Dr. Vaughn further added that "40 percent of the surgeons that do knee replacements, say, well, you can't trust the [ligament] anyway so why don't you just stabilize it and do the other type of device. . . ."
17. Because plaintiff's posterior cruciate ligament has ceased to properly function following the left knee arthroplasty, Dr. Vaughn recommended a revision surgery. Dr. Vaughn testified:
 I believe that her posterior cruciate ligament has become deficient and that makes the knee replacement not function properly, potentially gives the patient more symptoms, and can potentially cause problems in the future from the standpoint of instability and falls. And I stand by my recommendation with: This needs to be revised and there is no other treatment that will fix this particular problem.
18. The medical evidence of record shows that plaintiff's posterior cruciate ligament was aggravated by the left knee arthroplasty performed by Dr. Vaughn. The left knee arthroplasty was medically necessary for the treatment of plaintiff's compensable knee injury of December 9, 1997. Thus, the Full Commission finds that the aggravation of plaintiff's posterior cruciate ligament is a natural consequence flowing from plaintiff's primary compensable knee injury.
19. There is insufficient evidence of record to establish that any action or inaction (lack of exercise, etc.) on the part of plaintiff caused her posterior cruciate ligament to weaken. In fact, Dr. Vaughn testified that plaintiff had resumed normal functional activity (including walking in her neighborhood) prior to the decline of her posterior cruciate ligament.
20. Plaintiff was involved in a motor vehicle accident in Garner, North Carolina, on October 24, 2001. Plaintiff's vehicle was struck on the passenger side in the center of the car in what appears to be a "T-bone" type collision. Although Dr. Vaughn testified that a motor vehicle accident might possibly cause a deficiency of the posterior cruciate ligament, the greater weight of the medical evidence of record establishes that plaintiff's posterior cruciate ligament was aggravated by the left knee arthroplasty performed by Dr. Vaughn
 ***********
Based upon the foregoing Findings of Fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The aggravation of an injury is compensable if the primary injury arose out of and in the course of employment, and the subsequent aggravation of that injury is a natural consequence that flows from the primary injury. Heatherly v. Montgomery Components, Inc., 71 N.C.App. 377, 323 S.E.2d 29(1984). Unless the subsequent aggravation is the result of an independent intervening cause attributable to claimant's own intentional conduct, the subsequent aggravation of the primary injury is also compensable. Roper v. J.P. Stevens Co., 65 N.C. App. 69,308 S.E.2d 485 (1983). In the instant case, the medical evidence of record shows that plaintiff's posterior cruciate ligament was aggravated by the left knee arthroplasty performed by Dr. Vaughn. Thus, the aggravation of plaintiff's posterior cruciate ligament is a natural consequence flowing from plaintiff's primary compensable knee injury. SeeHeatherly, supra.
2. Plaintiff is entitled to future medical compensation, including the left knee revision surgery recommended by Dr. Vaughn, as reasonably required to effect a cure, give relief, or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19) and 97-25.
3. When he performed the first operation on plaintiff, the surgeon had two choices: to save the posterior cruciate ligament; the second, to cut it out. The surgeon realized that if he saved the posterior cruciate ligament and it later deteriorated, he would have to perform another operation to provide stability. If he cut out the posterior cruciate ligament in the first instance, the operation he would perform and the appliance he would use would not require later replacement because of instability. He took the calculated risk because the patient was young and the ligament appeared to be sound. The choice he made at the time of the first operation directly resulted in the second operation when his prediction about the future health of the ligament proved to be wrong. While the surgeon cannot be said to be guilty of malpractice, the same rationale behind the malpractice section of the workers compensation act should apply under such circumstances. In cases of malpractice, the act provides:
 The employer shall not be liable in damages for malpractice by a physician or surgeon furnished by him pursuant to the provisions of this section, but the consequences of any such malpractice shall be deemed part of the injury resulting from the accident, and shall be compensated for as such. N.C. Gen. Stat. § 97-26(h).
The consequences of the choice made by the surgeon at the time of the first operation should be compensated as a direct result of the compensable injury.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall provide future medical compensation to plaintiff, including the left knee revision surgery recommended by Dr. Vaughn, as reasonably required to effect a cure, give relief, or lessen the period of disability.
2. Defendants shall pay costs.
This 21st day of March 2005.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER