* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Rowell, and the briefs and oral argument before the Full Commission. The appealing party has shown good ground to reconsider the evidence. The Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as: *Page 2 
 STIPULATIONS
1. On the dates of injury, the parties were subject to and bound by provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant-employer.
3. Defendant-employer was insured by Liberty Mutual Insurance Company.
4. On October 3, 2002, plaintiff sustained a crush injury of the fourth and fifth fingers and lacerations on her right hand when the handle of a large concrete bucket broke and crushed her right hand.
5. On November 14, 2002, plaintiff sustained a second injury to her back.
6. Plaintiff's average weekly wage is $380.00, which yields a compensation rate of $253.35 per week.
7. Plaintiff last worked for defendant-employer on November 14, 2002.
8. The parties stipulated the following into evidence before the Deputy Commissioner:
 a) Stipulated Exhibit # 1, Pre-Trial Agreement.
 b) Stipulated Exhibit # 2, medical records.
 c) Stipulated Exhibit # 3, deposition of plaintiff dated November 4, 2003.
9. The issues before the Commission are whether plaintiff is totally and permanently disabled as a result of her on-the-job injuries and whether her cognitive and colonic inertia problems are related to either the October 3, 2002 or the November 14, 2002 injuries.
 * * * * * * * * * * * *Page 3 
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 44 years old with a tenth grade education. Plaintiff has worked as an industrial construction worker since leaving high school. In September 2002, plaintiff began working for defendant-employer and has worked as a laborer and carpenter's helper.
2. On October 3, 2002, plaintiff was guiding a concrete bucket that was being lowered by a crane. When plaintiff pressed the lever on the bucket to release the concrete, the lever broke and her right hand was crushed between the lever and the bucket. Plaintiff is right-hand dominant. Defendants accepted plaintiff's injury as compensable.
3. Following plaintiff's hand injury, she treated with Dr. Robert Fornasch at Shelby Walk-In Clinic. Dr. Fornasch released plaintiff to return to work with restrictions of no use of her right hand. Plaintiff also treated with Dr. William Stuckey, who recommended physical therapy. Dr. Stuckey also recommended nerve blocks, but they were unsuccessful. On July 14, 2003, Dr. Stuckey noted that there was nothing further he could offer plaintiff from a surgical standpoint. He stated that plaintiff was at maximum medical improvement with regard to her right hand and assigned her a 20% permanent partial impairment rating to her right little finger. Dr. Stuckey gave plaintiff permanent restrictions of no use of her right hand. Although the record is unclear, it appears that defendants have paid compensation to plaintiff for the permanent impairment to her finger. Plaintiff returned to work after she was released by Dr. Stuckey. *Page 4 
4. On November 14, 2002, plaintiff was carrying trash to be burned in a 55 gallon bucket. While walking down a sloping path to the bucket, she fell and struck her back on the ground.
5. Defendants accepted both of plaintiff's injuries as compensable, initially in South Carolina and then at a later date transferred the claims to the jurisdiction of North Carolina. Defendants have continued to pay plaintiff disability payments at least through the date of the hearing before the Deputy Commissioner.
6. Plaintiff received treatment at Cleveland Regional Medical Center for her November 14, 2002 injury. In the initial report completed approximately 45 minutes after her incident, plaintiff noted and the Commission finds that she did not lose consciousness and that when she fell, she struck her neck and not her head. Plaintiff testified at the Deputy Commissioner's hearing that she struck her head and that she had a "goose egg" on the back of her head. However, the medical records from Cleveland Regional Medical Center contain no reference to any head injury. Initial diagnostic reports indicated multi-level degenerative disc disease in plaintiff's cervical and lumbar spine.
7. On November 20, 2002, plaintiff began treating with Dr. Gerald Rollins, an orthopedic surgeon. Plaintiff complained of severe mid-thoracic pain; however, x-rays of the thoracic spine were unremarkable. Plaintiff did not mention to Dr. Rollins that she hit her head when she fell on November 14, 2002. Dr. Rollins felt plaintiff had a muscle strain and he recommended physical therapy. A December 18, 2002 MRI revealed multi-level degenerative disc disease and a subtle bulging annulus at the C5-6 level causing minimal depression upon her anterior thecal sac. The MRI revealed no herniated disc or neural compromise. Dr. Rollins continued plaintiff out of work. *Page 5 
8. On January 2, 2003, Dr. Rollins noted that plaintiff's physical complaints were out of proportion with her physical findings. Dr. Rollins noted an element of symptom magnification, although he did believe that plaintiff suffered a multi-level musculoskeletal injury that was probably a muscle strain to her leg and back area.
9. On February 12, 2003, Dr. Rollins noted that there was no objective evidence of any significant pathology, other than degenerative disc disease which pre-existed plaintiff's injury. Dr. Rollins also stated that he felt plaintiff exhibited some symptom magnification and that she was becoming difficult to treat. On February 19, 2003, plaintiff's complaints of pain had increased, although Dr. Rollins noted that her pain should be getting better.
10. Dr. Rollins wanted to make sure he was not missing a diagnosis so on March 1, 2003, repeat MRIs of the lumbar and thoracic spine were performed. The MRIs were unremarkable except for very mild degenerative disc disease at L2-3. Dr. Rollins noted that the degenerative disc disease did not appear to be anything more than normal aging. Dr. Rollins also noted that plaintiff complained of pain that was present without any movement; however, he also noted that plaintiff could get out of the chair and walk without her legs bothering her much. Dr. Rollins again noted that plaintiff did not have any significant pathology in her neck, thoracic or lumbar spine. He also noted that plaintiff began to get quite angry and emotional because he did not know why she was hurting. Dr. Rollins felt that there was nothing else that he could offer plaintiff. As of March 19, 2003, Dr. Rollins felt plaintiff was at maximum medical improvement, released her with a 0% permanent partial impairment rating and stated that she was capable of working. Dr. Rollins also referred plaintiff to Dr. David Shallcross for pain management. *Page 6 
11. In his deposition, Dr. Rollins stated that while the complaints of plaintiff's neck and back were consistent with a fall, "given the nature of the fall and the treatment that she received, I don't understand how she could have had that significant an injury to continue to hurt to that degree months later from that injury."
12. On April 14, 2003, plaintiff underwent a second opinion with Dr. Glenn Scott, an orthopedic surgeon. Dr. Scott reviewed previous records and performed an examination. He noted that plaintiff was knocked unconscious as a result of her fall. Dr. Scott felt plaintiff had chronic back pain syndrome, but that she had a significant degree of symptom magnification that complicated his diagnosis. Dr. Scott could not find any objective evidence of any serious or permanent structural pathology to indicate any permanent impairment.
13. In June 2003 plaintiff was involved in a motor vehicle accident in which her vehicle was struck from behind. Plaintiff struck her face on the steering wheel.
14. On September 17, 2003, plaintiff treated with pain management specialist, Dr. Phillip LaTourette. Dr. LaTourette agreed with Dr. Rollins that plaintiff's symptoms were out of proportion to her physical findings. Dr. LaTourette also noted no objective evidence to justify pain management treatment and that plaintiff's problems were probably psychological. Dr. LaTourette stated that plaintiff needed psychological treatment and to be weaned off opiate medications.
15. On November 14, 2003, plaintiff treated with Dr. Shallcross. Plaintiff complained of severe headaches that resulted in blurred vision, dizziness and vomiting, and that she passed out during some of these episodes. Plaintiff also stated that she was having difficulty concentrating and that she was depressed and suicidal. Dr. Shallcross noted that sometimes plaintiff would break into "baby talk." Plaintiff reported her November 14, 2002 injury to Dr. *Page 7 
Shallcross and stated that she struck her head and lost consciousness when she fell. Plaintiff did not report the June 2003 motor vehicle accident to Dr. Shallcross. In a letter dated December 27, 2004, Dr. Shallcross stated that plaintiff's October 3, 2002 and November 14, 2002 injuries at work caused her headaches and neck, low back and right hand problems, as well as traumatic brain injury. He also noted that plaintiff suffers from depression and anxiety, which he felt were most probably caused by her injuries at work. He felt that continued rehabilitation was not likely to improve plaintiff's function, that she was at maximum medical improvement and that her disability was permanent. Dr. Shallcross stated that the limiting factor in plaintiff's return to the workplace was her cognitive dysfunction.
16. On January 19, 2004, plaintiff saw clinical psychologist Robert Moss, Ph.D., for an evaluation. Plaintiff had no recall of her impact following her November 14, 2002 work accident and reported to Dr. Moss that her cognitive difficulties began two to three weeks after her accident. She did not mention the June 2003 motor vehicle accident to Dr. Moss. Plaintiff also reported memory loss and concentration difficulties. On February 9, 2004 and March 1, 2004, Dr. Moss conducted neuropsychological testing on plaintiff and concluded that she suffered from neuropsychological deficits in personality changes, attention, verbal fluency, and executive functioning. The test results were consistent with deficits associated with the frontal lobes. Dr. Moss recommended treatment at the Roger C. Peace head injury rehabilitation program.
17. Dr. Moss related plaintiff's current symptoms to a mild traumatic brain injury occurring during the fall on November 14, 2002 and felt she was permanently and totally disabled as a result of her psychological problems. However, Dr. Moss noted some inconsistencies and possible exaggeration of complaints and problems. *Page 8 
18. From July 2004 until November 2004, plaintiff received treatment at the Peace rehabilitation program. Since November 2004, plaintiff has treated with psychologist Craig Young, Ph.D. In letters dated May 26, 2005 and June 1, 2005, Dr. Young stated that plaintiff was totally disabled from work and that her anxiety, depression and other psychological problems were most probably caused or exacerbated by her October 3, 2002 and November 14, 2002 injuries at work.
19. Based upon the greater weight of the medical evidence, the Full Commission finds that plaintiff's anxiety and depression are causally related to the October 3, 2002 and November 14, 2002 injuries by accident.
20. In August 2005, plaintiff was referred to Dr. Gabor Sovenyhazy, a board certified colorectal surgeon, for treatment of constipation and anal bleeding. A colonoscopy showed some diverticulosis and polyps. After additional testing, Dr. Sovenyhazy performed a total colectomy on December 9, 2005, as plaintiff's bowels were not moving. At his deposition, Dr. Sovenyhazy testified that laxative abuse or back injury can cause colonic inertia. It was Dr. Sovenyhazy's opinion that plaintiff's colonic inertia problems were probably caused by a long-term intake of narcotics and that her treatment and surgery were most probably made necessary by the use of prescription pain medications. Based upon Dr. Sovenyhazy's expert opinions, the Full Commission finds that plaintiff's colonic inertia problems resulted from her use of narcotic pain medications and therefore are causally related to the November 14, 2002 injury.
21. On November 8, 2005, plaintiff underwent an independent medical evaluation with Dr. Kent Kistler, a board certified neurologist. At his deposition Dr. Kistler recalled that plaintiff stated that on November 14, 2002 she slid down an embankment and landed forcefully, but said nothing about hitting her head. Dr. Kistler felt that plaintiff has either a psychiatric or *Page 9 
malingering condition, but that she does not have dementia or organic brain syndrome. Dr. Kistler noted that plaintiff has no neurological deficits or problems and that he was not sure of plaintiff's diagnosis. Dr. Kistler testified and the Full Commission finds that because plaintiff's speech problems, cognitive deficits and migraine headaches did not appear until November 2003, they are unlikely to be related to her fall in November 2002. Dr. Kistler had no opinion regarding any psychological syndrome plaintiff may have. Dr. Kistler testified that a CT or MRI of the brain, even three years after the accident, would show evidence of bleeding on the brain or intracerebral hemorrhage, but not a concussion. However, he did not think that plaintiff sustained a concussion at the time of the fall. Dr. Kistler stated that plaintiff's problems were more likely psychiatric than physical and that plaintiff's current complaints are not related to an injury to the brain. Dr. Kistler felt that plaintiff was not employable as of November 3, 2005 due to her psychiatric symptoms. Dr. Kistler stated that he did not recommend any further neurological treatment or assessment and that plaintiff has no neurological problems that contribute to her disability. He recommended plaintiff have independent neuropsychological testing and a psychiatric evaluation.
22. The Commission gives greater weight to the expert opinions of Dr. Rollins and Dr. Kistler than to Drs. Moss, Young and Shallcross and finds that plaintiff does not suffer from any cognitive problems related to her October 3, 2002 or November 14, 2002 injuries. Drs. Moss, Shallcross and Young did not provide expert witness testimony in this case. The Commission finds that plaintiff's version of hitting her head is not credible. The initial report from Cleveland Regional Medical Center on November 14, 2002, noted that plaintiff was alert and oriented, presented with back, hip and shoulder pain, and denied any loss of consciousness. When plaintiff received treatment from Dr. Rollins following the fall, she made no mention of a *Page 10 
head injury. Because the opinions of Drs. Moss, Young and Shallcross are based upon plaintiff's inaccurate history of hitting her head and losing consciousness, their opinions concerning her cognitive problems must be given less weight.
23. As the result of the compensable injuries sustained on October 3, 2002 and on November 14, 2002, plaintiff has not returned to work and has been disabled from any employment since November 14, 2002.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On October 3, 2002, plaintiff sustained an admittedly compensable injury by accident to her right hand arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6). Plaintiff sustained a 20% permanent functional impairment to her right little finger, for which compensation has already been paid. N.C. Gen. Stat. § 97-31(5).
2. On November 14, 2002, plaintiff sustained an admittedly compensable injury by accident to her back arising out of and in the course of her employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's colonic inertia and resulting surgery and anxiety and depression were the direct and natural result of her compensable injuries by accident on October 3, 2002 and November 14, 2002.Heatherly v. Montgomery Components, Inc., 71 N.C. App. 377,323 S.E.2d 29 (1984), disc. review denied, 313 N.C. 329, 327 S.E.2d 890
(1985). Plaintiff's cognitive *Page 11 
problems are not causally related to her compensable injury by accident on November 14, 2002. Click v. Freight Carriers, 300 N.C. 164,265 S.E.2d 389 (1980).
4. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than her pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
5. In the present case, plaintiff is capable of some work, but has shown that it would be futile to seek employment because of her lack of education, limited work experience, inability to use her right hand, and her physical conditions including her colonic problems, depression and the non-work related cognitive deficits. Demery v. Perdue Farms, Inc.,supra. Defendants have *Page 12 
not produced evidence that suitable jobs are available for plaintiff and that she is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Id.
6. Therefore, plaintiff is totally disabled from any employment and is entitled to payment by defendants of compensation at the rate of $253.35 per week beginning November 14, 2002 and continuing until further Order of the Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendants pay all medical expenses incurred or to be incurred as the result of her compensable injuries, so long as such evaluations, treatments and examinations are reasonably required to effect a cure, give relief or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25. The approved medical expenses include treatment of plaintiff's depression and anxiety, colonic inertia and surgery, but do not include treatment for plaintiff's cognitive problems.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee awarded below, defendants shall pay plaintiff total disability compensation at the rate of $253.35 per week from November 14, 2002 and continuing until further Order of the Commission. To the extent that defendants have already paid this compensation, they are entitled to a credit for such payment.
2. Defendants shall pay for all medical expenses incurred or to be incurred as the result of plaintiff's compensable injuries. Approved medical expenses include treatment for plaintiff's anxiety and depression, colonic inertia and surgery. *Page 13 
3. A reasonable attorney's fee of 25% of the compensation due plaintiff under paragraph 1 of this Award is approved for plaintiff's counsel. Defendants shall pay every fourth compensation check directly to plaintiff's counsel.
4. Defendants shall bear the costs.
The 19th day of September, 2007.
S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/______________________ DANNY LEE McDONALD COMMISSIONER
 S/______________________ DIANNE C. SELLERS COMMISSIONER