***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Stanback and the briefs and arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission AFFIRMS with some modifications the Opinion and Award of the Deputy Commissioner.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matter of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, and the Industrial Commission has jurisdiction over the parties and the subject matter.
2. On January 6, 2004, the parties were bound by and subject to the provisions of the North Carolina Workers' Compensation Act.
3. All parties are correctly designated and there is no question as to misjoinder or non-joinder of parties.
4. On January 6, 2004, plaintiff was employed by defendant-employer as a bus driver. An employer-employee relationship existed between the parties on that date.
5. ACE USA/ESIS was the workers' compensation carrier for defendant-employer for all the relevant times.
6. Defendant-employer, through Specialty Risk Services, accepted compensability of plaintiff's claim.
7. The following documents were entered into evidence at the Deputy Commissioner's hearing:
 a. Stipulated Exhibit #1: Industrial Commission forms, discovery responses, various correspondence, plaintiff's employment file, and plaintiff's medical records
 b. Plaintiff's Exhibit #1: January 15, 2004 — picture of plaintiff's eye
 c. Defendants' Exhibit #1: Rehabilitation reports (Barnes)
 d. Defendants' Exhibit #2: Letter to Dr. Fekrak (Barnes) *Page 3 
 e. Defendants' Exhibit #3: Fax cover to Dr. Fekrak with copy to plaintiff's attorney
8. The issue before the Full Commission is whether an aggravation of plaintiff's pre-existing left eye glaucoma condition is causally related to the compensable injury by accident plaintiff sustained to his right eye.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 58 years old and had obtained a high school diploma. He also studied computer engineering at Central Piedmont college for a year and a half, before leaving to work full-time. In addition to having a commercial driver's license, plaintiff also is a certified welder.
2. In February 1999, plaintiff passed a pre-employment physical examination that included a vision test, which showed plaintiff had 20/20 vision in both eyes. Defendant-employer was aware of plaintiff's medical history, which included retina surgery, cataract surgery to his left eye, and glaucoma in his left eye. Defendant-employer required plaintiff to undergo subsequent physical examinations, including a December 3, 2003 eye examination. At the December 3, 2003 exam, plaintiff was cleared to perform his full work duties as a commercial bus driver for defendant-employer.
3. On January 6, 2004, plaintiff was attacked by a passenger wielding a rubber mallet. Plaintiff sustained blows to his head and extensive trauma to his right eye, resulting in *Page 4 
loss of vision in his right eye. Defendant-employer accepted plaintiff's right eye injury as compensable.
4. Prior to January 6, 2004, plaintiff had 20/20 vision in both eyes. He left eye was diagnosed with glaucoma, which he maintained with prescription medication. Plaintiff testified that prior to January 6, 2004, his glaucoma condition in his left eye did not impact his ability to see or the clarity of his vision. After the January 6, 2004 injury, however, plaintiff testified that his vision in his left eye was worse. Plaintiff had problems with his peripheral vision at a spot at the top of his eye, but after the injury his vision was hazy, and objects appeared white and distorted.
5. On January 7, 2004, Dr. Arman Farr, an ophthalmologist specializing in the retina, performed surgery on plaintiff's right eye for repair of a ruptured globe, anterior vitrectomy and anterior chamber washout. Dr. Farr performed an additional two surgeries in attempt to repair plaintiff's right eye. Dr. Farr noted that plaintiff sustained severe trauma to his right eye and noticed swelling and bruising on plaintiff's face. As a result of the January 6, 2004 attack, plaintiff had no vision in his right eye. According to Dr. Farr plaintiff is limited to a 20% visual field in his left eye, which constitutes legal blindness.
6. On March 25, 2004, Dr. Todd Brown, an ophthalmologist, examined plaintiff and determined that plaintiff had elevated intraocular pressure. At that visit, plaintiff complained of blurred vision in his left eye, so Dr. Brown increased plaintiff's left eye prescription to 20/30. On April 6, 2004, Dr. Brown found plaintiff's vision was the same, that plaintiff had not updated his glasses prescription, and that his pressure was better. Dr. Brown stated that with the loss of plaintiff's right eye, plaintiff was more aware of the damage and progression of the glaucoma in his left eye. Dr. Brown further noted that plaintiff's right eye injury and the steroids were a *Page 5 
contributing factor to the increased pressure and plaintiff's increased sensitivity to that pressure. Dr. Brown felt that sympathetic ophthalmia could be an issue for plaintiff in the future and that plaintiff may need a selective laser trabeculoplasty procedure in the future to correct this problem.
7. On December 14, 2004, Dr. Sharon Fekrat, an ophthalmologist with a specialty in retina surgery, examined plaintiff. Her examination revealed that plaintiff has severely limited tunnel vision in his left eye, and that based upon this constricted visual field and even though plaintiff's vision is 20/20, plaintiff would be considered legally blind in his left eye. However, if plaintiff's vision in his right eye had not been eliminated, he would not be considered legally blind in his left eye.
8. Dr. Farr referred plaintiff to Dr. Thomas Mundorf, an ophthalmologist specializing in glaucoma, for evaluation of plaintiff's left eye condition. On February 7, 2005, Dr. Mundorf first saw plaintiff. During the course of his treatment, he helped plaintiff manage the glaucoma in his left eye by monitoring pressure, evaluating plaintiff's optic nerve and prescribing medication. On October 21, 2005, Dr. Mundorf changed plaintiff's medication because plaintiff tolerated the new prescription better. This was the only medication change made by Dr. Mundorf. Also on October 21, 2005, Dr. Mundorf performed a single field of vision test and found that that plaintiff lost between 75-80% of his field of vision, although his acuity was very good at 20/20.
9. At his deposition, Dr. Mundorf testified that plaintiff's glaucoma in his left eye is stable and has not worsened during his course of treatment. Compared to the single field of vision test performed on April 6, 2004, Dr. Mundorf stated that plaintiff had no real significant difference in his field of vision. Dr. Mundorf testified that plaintiff's right eye injury on January *Page 6 
6, 2004 has not affected the condition in plaintiff's left eye. He further opined that plaintiff's glaucoma has not progressed since 2000. Dr. Mundorf did state that he would expect someone with plaintiff's glaucoma condition to have difficulty driving in less light in the late afternoon and at night. According to Dr. Mundorf, plaintiff would have needed continued glaucoma management and medication even without the injury to his right eye and the condition of plaintiff's right eye did not affect the treatment plaintiff needed for his glaucoma in his left eye.
10. The Commission gives greater weight to the testimony of Drs. Farr, Brown and Fekrat and finds that, as a result of plaintiff's January 6, 2004 injury to his right eye, plaintiff's left eye sustained increased pressure and worsened vision requiring a change of prescription, that plaintiff became more aware of the damage and progression in his left eye, and, had plaintiff's vision in his right eye not been eliminated, he would not be considered legally blind in his left eye.
11. After January 6, 2004 when plaintiff lost his sight in his right eye, plaintiff's left eye suffered from constricted tunnel vision and, therefore, plaintiff was unable to see sufficiently to perform his duties as a bus driver for defendant-employer. After the injury by accident, plaintiff could not qualify for a commercial driver's license. However, plaintiff did testify that he does drive during the day when it is not raining.
12. As of the Deputy Commissioner's hearing, defendants were paying plaintiff ongoing temporary total disability benefits at the rate of $508.82 per week beginning January 6, 2004. Any issue regarding plaintiff's continuing disability is not before the Commission at this time and is reserved for future determination.
 *********** *Page 7 
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following: CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an accident arising out of and in the course of employment. N.C. Gen. Stat. § 97-2(6).
2. On January 6, 2004, plaintiff sustained an admittedly compensable injury by accident to his head and right eye arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2
(6).
3. Our courts have long approved causal connections between an initial injury and its direct and natural consequences and have held that injured workers are entitled to be compensated for all disability caused by and resulting from a compensable injury. Horne v. Universal LeafTobacco Processors, 119 N.C. App. 682, 459 S.E.2d 797, disc. rev.denied, 342 N.C. 192, 403 S.E.2d 237 (1995); Heatherly v. MontgomeryComponents, Inc., 71 N.C. App. 377, 323 S.E.2d 29 (1984), disc. rev.denied, 313 N.C. 329, 327 S.E.2d 890 (1985).
4. In this case, plaintiff's left eye suffered from pre-existing glaucoma; however, the glaucoma reduced plaintiff's field of vision, without reducing his acuity. The greater weight of the evidence shows that both plaintiff's right and left eyes worked together to enable plaintiff to have functioning vision. However, the loss of his right eye due to the January 6, 2004 injury by accident caused plaintiff's left eye to have increased swelling and worsened vision requiring a prescription change. Plaintiff became more aware of the deterioration in his left eye and his reduced field of vision resulted in his left eye being considered legally blind. Plaintiff's right eye injury and the steroids were a contributing factor to the increased pressure and plaintiff's *Page 8 
increased sensitivity to that pressure. For these reasons, plaintiff's January 6, 2004 compensable injury to his right eye aggravated his pre-existing glaucoma in his left eye. Plaintiff has shown that the aggravation of the pre-existing glaucoma was the direct and natural consequence of the compensable injury by accident. Heatherly v.Montgomery Components, Inc., supra.
5. As a result of the compensable injury by accident, plaintiff sustained an injury to his right eye that resulted in a material aggravation of the pre-existing left eye glaucoma such that treatment for that condition is compensable and shall be provided by defendants. N.C. Gen. Stat. §§ 97-2(19), 97-25.
6. Plaintiff is entitled to payment by defendants of all medical expenses incurred or to be incurred as a result of his compensable injury, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability, including medical expenses associated with the aggravation and/or acceleration of glaucoma in plaintiff's left eye. N.C. Gen. Stat. §§ 97-2(19); 97-25.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all related medical expenses incurred or to be incurred by plaintiff as the result of his injury by accident, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, give relief or tend to lessen plaintiff's period of disability. The approved medical treatment includes medical expenses associated with the aggravation and/or acceleration of glaucoma in plaintiff's left eye.
 2. Defendants shall pay the costs. *Page 9 
This 13th day of October, 2008.
 S/___________________
 LAURA KRANIFELD MAVRETIC
 COMMISSIONER
CONCURRING:
 S/_____________ DANNY LEE McDONALD COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER *Page 1